In the Matter of the Marriage of

John Paul EPLER,
*Petitioner-Respondent,*
*and*

Andrea Michelle EPLER,
nka, Andrea Michelle Walker,
*Respondent-Appellant,*
*and*

Kimberley Sue GRAUNITZ,
*Third Party Respondent-Respondent.*

Marion County Circuit Court
04C33678; A148643

309 P3d 1133

Richard F. Alway argued the cause and filed the brief for appellant.

No appearance for respondent John Paul Epler.

No appearance for respondent Kimberley Sue Graunitz.

Before Haselton, Chief Judge, and Armstrong, Wollheim, Schuman, Ortega, Sercombe, Duncan, Nakamoto, Hadlock, and Egan, Judges.

ARMSTRONG, J.

Duncan, J., concurring.

Egan, J., dissenting.

## ARMSTRONG, J.

Mother appeals a judgment denying her motion to modify custody, parenting time, and child support for her daughter. Mother contends that the trial court erred under ORS 107.135, ORS 109.119, and the federal constitution when it refused to modify a 2005 marital dissolution judgment that awarded sole legal and physical custody of daughter to grandmother. In the alternative, mother contends that the trial court erred when it refused to modify the parenting plan for daughter and to adjust the child-support obligations of the parties. We conclude that the trial court did not err when it refused to modify custody, but we are unable to determine whether the trial court abused its discretion by refusing to modify the parenting plan or child support. Accordingly, we affirm the court's custody decision but remand for the court to reconsider its decision on the parenting plan and child support.

Most of the relevant facts are undisputed.[1] Daughter is nine years old and has lived with grandmother for daughter's entire life. At daughter's birth, mother and father were married and living with grandmother in Portland. When daughter was approximately six months old, mother and father separated; father left Oregon to fight wildfires while mother continued living with daughter and grandmother. At some point thereafter, when daughter was between six and 12 months old, mother moved and left daughter in grandmother's care. Daughter has remained in grandmother's sole, uninterrupted care since then.

In December 2004, just after daughter's first birthday, mother moved to Virginia to be closer to mother's family. The day before mother left, grandmother arranged to meet with mother and father in order for them to sign documents providing for the dissolution of mother's and father's marriage and establishing custody of daughter. The parties met briefly, and mother and father signed a marital settlement agreement and a stipulated general judgment dissolving

---

[1] Mother asks that we exercise our discretion to review the case *de novo*. *See* ORS 19.415(3)(b) (providing that, in an equitable action, Court of Appeals may, in its discretion, "try the cause anew upon the record"). We do so only in exceptional cases, ORAP 5.40(8)(c), and we decline mother's request in this case.

their marriage. The settlement agreement contained the following provisions regarding custody of daughter:

"Husband and Wife acknowledge that [Grandmother] has been the primary custodian of [daughter] since [daughter's] birth in 2003. Through this agreement, it is the intention of the parties to formalize Grandmother's custody, and provide for both Husband and Wife to pay child support to Grandmother for [daughter's] benefit.

"* * * * *

"Husband and Wife desire that [Grandmother], be awarded sole legal and physical custody of [daughter], subject to the joint right of both Husband and Wife to equally share the parenting time * * *, and with the understanding that Husband's parenting time will include Grandmother."

The agreement also noted that, as primary custodian, grandmother had "exclusive discretion in day-to-day parenting, routine medical and dental matters, [and] interaction with school authorities" and "full emergency authority to seek aid for the child under whatever circumstances [grandmother] deems appropriate."

The stipulated judgment, in turn, incorporated the marital settlement agreement in its entirety. It further provided that

"Grandmother * * * is awarded sole legal and physical custody of [daughter], subject to the joint right of both Husband and Wife to * * * parenting time with [daughter] * * *, and with the understanding that Husband's parenting time will include Grandmother."

The judgment was entered on March 9, 2005, three months after mother had moved to Virginia. Daughter was one year old.

Mother first filed a motion under ORS 107.135 to modify the stipulated dissolution judgment in September 2006.[2] She alleged that, since her move to Virginia, she had made changes to stabilize her life and that those changes

---

[2] ORS 107.135 provides, as relevant:

"(1) The court may at any time after a judgment of annulment or dissolution of marriage or of separation is granted, upon the motion of either party * * *.

constituted a change of circumstances sufficient to justify a change in custody. *See, e.g., Bradburry and Bradburry,* 237 Or App 179, 186, 238 P3d 431 (2010) (describing two-step analysis applicable to motion to change custody; first step requires party seeking change to establish a change in circumstances related to parental capacity). In an affidavit opposing modification, father emphasized that mother had been gainfully employed when she voluntarily left Oregon; that, at that time, she had agreed to grant grandmother full legal custody of daughter; and that she had returned to Oregon to see daughter only one time since 2004. Father further asserted that "[a]s petitioner in this case I do not want any changes made to the custody agreement we set forward in December [2004]. I believe this is for [daughter's] best interest." Father later amended his response: "If any change needs to be made of custody of [daughter] then I * * * would like full custody of [her]. She has a home here, friends here and close family." Grandmother also opposed modification. Ultimately, in September 2007 mother withdrew her motion to modify the dissolution judgment.

Mother filed a second motion to modify the stipulated dissolution judgment in May 2008, citing as authority both ORS 107.135 and ORS 109.119.[3] Mother again alleged that, since moving to Virginia, she had made changes to stabilize her life. However, in a departure from her initial motion, she did not allege that those changes constituted a sufficient

---

"(a) Set aside, alter or modify any portion of the judgment that provides for * * * the custody, parenting time, visitation, support and welfare of the minor children * * *."

[3] ORS 109.119 provides, as relevant:

"(1) * * * [A]ny person, including but not limited to a related or nonrelated foster parent, stepparent, grandparent or relative by blood or marriage, who has established emotional ties creating a child-parent relationship or an ongoing personal relationship with a child may petition or file a motion for intervention with the court having jurisdiction over the custody, placement or guardianship of that child * * *.

"(2)(a) In any proceeding under this section, there is a presumption that the legal parent acts in the best interest of the child.

"(b) In an order granting relief under this section, the court shall include findings of fact supporting the rebuttal of the presumption described in paragraph (a) of this subsection.

"(c) The presumption described in paragraph (a) of this subsection does not apply in a proceeding to modify an order granting relief under this section."

change in circumstances to justify modification of custody. Instead, relying on ORS 109.119 and the federal constitution, mother alleged that she was entitled to priority over grandmother as to custody of daughter without regard to the changes that mother had made in her life. Mother's motion sought (1) an award of sole legal custody of daughter to mother; (2) a new parenting plan that reflected the long-distance nature of mother's relationship with daughter, "with or without a change of custody"; and (3) a modification of the child-support obligations.

Father again opposed modification, at least as to custody, because mother had "failed to spend time with [daughter] and bond with [daughter]." During the modification proceedings, he indicated that he felt it to be in daughter's "best interests to remain here in Oregon, based on the fact that the—primarily the family that she has known over the years has been here in Oregon, and that she is a—in an environment that is stable for her, and is in her best interests." Grandmother also opposed modification on several grounds relating to the proposed change in custody. However, she did not oppose modification of the parenting plan or child support.

A modification hearing was held and, noting mother's failure to allege facts to establish the existence of a substantial change in circumstances, as required for a modification under ORS 107.135, grandmother moved under ORCP 21(a)(8) to dismiss mother's motion to modify the stipulated dissolution judgment. Mother argued in response that, in addition to ORS 107.135—which requires a substantial change in circumstances—her motion was brought under in ORS 109.119—which does not. The trial court disagreed with mother, concluding that ORS 109.119 did not apply to the modification proceeding and that a substantial change in circumstances had to be established under ORS 107.135 before the court could modify the prior custody decision. However, the court allowed mother to amend her motion to add an allegation of changed circumstances.

Mother testified at the modification hearing that, at the time of the stipulated dissolution judgment, she had had mental and emotional problems, was unemployed, and had

been drinking heavily. The evidence showed that, after she moved to Virginia, mother had earned a college degree, completed parenting courses, and secured stable employment as a corrections officer. Further, mother testified that she had recently undergone psychological testing that showed that she did not suffer from any impairment that would affect her ability to care for daughter. She also testified that she would occasionally drink socially with friends but no longer abused alcohol. Aside from her testimony, mother did not present any evidence of the psychological examination or of her alcohol use, although she did provide the psychologist's report to grandmother's attorney.

Also admitted into evidence was a two-year-old report from a custody evaluator that recommended that mother and grandmother have joint custody of daughter, with grandmother retaining primary, residential custody. The report concluded that daughter, who was five years old when the report was prepared, would likely suffer "significant anxiety" were she to relocate to Virginia but that contact between mother and daughter should be encouraged. Specifically, the report "suggested that child support be negotiated so that [mother] could come to Oregon every six weeks for at least three full days" to help "solidify" mother's and daughter's relationship. It also reflected the custody evaluator's belief that mother could gain primary custody of daughter after a period of years if mother "is conscientious in the time that she spends with [daughter] and puts effort into maintaining that relationship by visiting her in Oregon or relocating." Finally, the report noted that, were mother to relocate to Oregon, a parenting plan could be fashioned to shift primary, residential custody of daughter to mother "within a year's time."

At the hearing, the custody evaluator testified that her contact with the parties in the two years following her report was limited to a single visit with mother and daughter. Accordingly, much of the evaluator's testimony about the adaptability of children and her concerns about shifting daughter to mother's care was based on general information. Nevertheless, the evaluator testified that the plan proposed

in her prior report "could work now also," with regularity of parenting time. She testified that children who are seven years old—as daughter was at the time of the hearing—would have less difficulty with long-distance travel than children who are five years old—the age of daughter at the time of the report. Accordingly, she believed that daughter would be able to visit mother in Virginia during the summer for periods up to two weeks, assuming that daughter had had one or two shorter visits to Virginia in the interim. Finally, she acknowledged that a two-year transition period remained appropriate.

In their closing statements, mother and grandmother argued extensively over whether there had been a substantial change in mother's circumstances justifying a custody modification. However, they agreed that the parenting plan should be modified. Asked whether grandmother opposed that modification, her counsel replied, "No, Your Honor. I think it would be beneficial for all involved to have something that's going to be updat[ed], hopefully, and that may be actually followed through." Although they differed in details, mother and grandmother both advanced similar parenting plans based on the custody evaluator's report. Each agreed that mother should begin by visiting daughter in Oregon for three days every six weeks and that, after a number of successful visits in Oregon, a transition to visits in Virginia would be appropriate.

The court ultimately denied mother's motion to modify the stipulated dissolution judgment. In a letter opinion that focused entirely on custody, the court concluded that mother had failed to prove that a substantial change in circumstances had occurred between entry of the dissolution judgment and the modification hearing. The court also concluded that it would not be in daughter's best interests to move from Oregon to Virginia. The court did not address mother's argument that she was entitled to a preferential custodial presumption under the federal constitution, independently of ORS 109.119, nor did it discuss its rejection of mother's motion to modify the parenting plan and child support. The court subsequently awarded grandmother costs and attorney fees in a supplemental judgment.

Mother appeals, contending that the trial court erred in denying her modification motion. Specifically, mother challenges the court's custody determination and its failure to modify the parenting plan. We turn first to custody. Mother contends that the trial court erred under ORS 107.135, ORS 109.119, and the Fourteenth Amendment to the federal constitution when it denied her custody of daughter. Before we address those contentions, which implicate the authority of the trial court to determine custody, a review of the statutory framework for custody decisions is helpful.

As noted, the court first determined custody of daughter in its stipulated dissolution judgment. To the extent that that judgment "provid[ed] for the legal custody, physical custody, parenting time[, and] visitation" of daughter, it constituted a "child custody determination" under ORS 109.741, which provides the "exclusive jurisdictional basis for making a child custody determination by a court of this state." *See* ORS 109.704(3) (defining "child custody determination"). The legal effect of that determination is clear:

> "A child custody determination made by a court of this state that has jurisdiction under ORS 109.701 to 109.834 binds all persons who have been served in accordance with the laws of this state or notified in accordance with ORS 109.724 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. *As to those persons, the determination is conclusive as to all decided issues of law and fact except to the extent the determination is modified."*

ORS 109.717 (emphasis added). Once made, the court retains exclusive, continuing jurisdiction to modify the custody determination—until jurisdiction expires on the occurrence of circumstances not present here. ORS 109.744.

Of course, modification of a child-custody determination requires modification of the judgment in which it is embodied. Where, as here, the child-custody determination was made in a dissolution judgment, *see* ORS 107.105(1)(a) (providing that dissolution judgment may provide for custody), modification is governed by ORS 107.135, which provides, as relevant:

"(1) The court may at any time after a judgment of annulment or dissolution of marriage * * *, upon the motion of either party * * *:

"(a) Set aside, alter or modify any portion of the judgment that provides * * * for the custody, parenting time, visitation, support and welfare of the minor children * * *."

A predicate to modification under that statute is a showing that a substantial change in circumstances relevant to the capacity of the parties to care for the child has occurred since the last custody order or judgment. *E.g.*, *Bradburry*, 237 Or App at 186. If a change in circumstances is shown, the court is to make a custody award that is in the best interests of the child, considering a number of factors, including those specified in ORS 107.137(1):

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child;

"(c) The desirability of continuing an existing relationship;

"(d) The abuse of one parent by the other;

"(e) The preference for the primary caregiver of the child * * *; and

"(f) The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."

The other statutory provision on which mother relies, ORS 109.119, allows any person "who has established emotional ties creating a child-parent relationship or an ongoing personal relationship with a child" to seek intervention "with the court having jurisdiction over the custody" of the child to ask the court to award the person custody, guardianship, or visitation with the child. ORS 109.119(1), (3)(a). In the event that no court has jurisdiction over the child's custody, the person may initiate a proceeding by petitioning the court for the county in which the child resides for an award of custody, guardianship, or visitation. ORS 109.119(1). If the court concludes that it would be in the child's best interest,

the court may grant visitation, guardianship, custody, or another right to the third party. ORS 109.119(3)(a).

Because ORS 109.119 has the potential to profoundly interfere with parent-child relationships, it contains a "presumption that the legal parent acts in the best interest of the child" in deciding with whom the child interacts. ORS 109.119(2)(a). That presumption must be rebutted by a preponderance of the evidence, as reflected in written findings of fact, before a court may award relief to a nonparent under ORS 109.119. ORS 109.119(4) contains a nonexclusive list of factors that the court should consider in determining whether the presumption has been rebutted. However, the presumption applies only to the state's initial interference with the parent-child relationship, *viz.*, when the court initially orders custody, guardianship, or visitation to the intervening party; it does not apply in a proceeding to modify an order granting relief under ORS 109.119. ORS 109.119(2)(c).

Although silent on the matter, ORS 109.119 can apply in a marital dissolution proceeding. For the reasons discussed above, a court presiding over a marital dissolution proceeding has jurisdiction to determine the custody of the couple's children, and, therefore, a third party may intervene under ORS 109.119 in the dissolution proceeding. In that circumstance, to the extent that the third party seeks a custody arrangement different from that desired by the parents, the third party would need to rebut the presumption in ORS 109.119(2)(a) in favor of the parents. Conversely, were the parents to agree that the third party should be given sole legal custody of their children, the presumption would work in favor of the third party; the court would presume that the parents' desire to award custody to the third party would be in the children's best interest. Under either circumstance, once the court's child-custody determination has been memorialized in the dissolution judgment, the presumption would have no effect in any subsequent modifications of the dissolution judgment under ORS 107.135. ORS 109.119(2)(c).[4]

---

[4] We note that, although ORS 109.119(2)(c) explicitly renders the presumption inapplicable in any modification proceeding, it is silent on the manner in which a party may seek a modification. Presumably, where ORS 109.119 is invoked to

Keeping those principles in mind, we turn to mother's arguments under ORS 107.135 and ORS 109.119, addressing first her argument that the court erred in its application of ORS 107.135. Under that statute, it is well established that a party seeking to modify a child-custody determination must prove that there has been a substantial change in circumstances before the court can consider whether to modify custody. *See, e.g., State ex rel Johnson v. Bail*, 325 Or 392, 396-97, 938 P2d 209 (1997); *Merges v. Merges*, 94 Or 246, 257-58, 186 P 36 (1919). Here, the trial court concluded (1) that mother had failed to carry her burden of demonstrating a substantial change in circumstances and, even assuming that she had carried that burden, (2) that a modification of custody was not in daughter's best interest. Mother challenges both conclusions, which we address in turn.

In concluding that mother had failed to prove a sufficient change in circumstances, the court focused on evidence relating to mother's mental health and alcohol use:

"Mother alleges in her Affidavit supporting the Motion for Modification that she had mental and emotional problems when she left [daughter] in [grandmother's] care and moved to Virginia. She also acknowledged during her trial testimony that she was drinking heavily on a regular basis before she moved out of state in 2004. She further testified at trial that she had recently undergone psychological testing in Virginia where she has lived since 2004. She stated the testing revealed that she does not suffer from a serious mental impairment. However, the court did not receive <u>any</u> evidence from the psychologist corroborating Mother's statement. Likewise, no corroborative evidence was received confirming completion of alcohol treatment and continued abstinence."

(Underscoring in original.)

---

intervene in a court proceeding that is subject to its own modification statute—as, for example, dissolution judgments are subject to modification under ORS 107.135—a party would seek modification of the underlying judgment under the operative statute. However, where ORS 109.119 is invoked independently—to initiate a proceeding in the court of the county in which the child resides—any modification would seem to flow from a court's inherent power to modify judgments, subject to whatever limitations may apply. *Cf.* ORCP 71 C ("This rule does not limit the inherent power of a court to modify a judgment within a reasonable time * * *."); ORS 109.747 (limiting court jurisdiction to modify child-custody determinations).

Mother challenges the court's treatment of the evidence, arguing that "no evidentiary rule requir[es] corroboration of a witness's testimony as a prerequisite of its veracity," and that mother was not required to present documentary evidence about her medical condition—*viz.*, her psychological evaluation and alcohol dependency. However, mother's arguments ignore her burden to show a substantial change in circumstances. Ultimately, the trial court was not persuaded by mother's testimony that her mental health and use of alcohol had changed, and on that basis it concluded that mother had failed to prove the requisite change in circumstances. Although mother was not required to present corroborative evidence in order for her testimony to be found to be credible, the trial court was not required to find mother's testimony to be credible in the absence of compelling corroborative evidence, and we see no reason to disturb the trial court's findings on appeal. *See, e.g., Bragger v. Oregon Trail Savings*, 275 Or 219, 221-22, 550 P2d 421 (1976) ("The trial judge is in a much better position to assess the credibility of the witnesses than is [an appellate] court and his conclusion * * * is entitled to considerable weight.").

In any event, even were we to take issue with the court's change-in-circumstances determination, the court went further and concluded that a change of custody was not in daughter's best interests:

"Not only does the court find that Mother has not proven a substantial change in circumstances, but I also find such a move (under today's circumstances) would not be in [daughter's] best interest. Such a move would uproot [daughter] from the only home (Oregon) she has ever known, and separate her from her grandmother to whom she is strongly bonded. [Daughter] is well settled in her school, has friends and Father's extended family in Oregon."

Except in cases where we exercise our discretion to review *de novo*, "our standard of review of a trial court's best interests determination is for abuse of discretion." *Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116, *rev den*, 353 Or 103 (2012). Under that standard of review, "we will reverse only if a trial court's discretionary determination is not a legally permissible one." *Id.* Leaving aside mother's due process argument, mother does not argue—nor do we conclude—

that the trial court's best-interest determination was legally impermissible. To the contrary, it reflected a sound consideration of the factors the court was to apply under ORS 107.137—among others, the emotional ties between daughter and other family members in Oregon, ORS 107.137(1)(a); the desirability of continuing existing relationships with daughter's friends, classmates, and teachers, ORS 107.137(1)(c); and the preference for grandmother, daughter's primary caregiver, ORS 107.137(1)(e). Accordingly, we reject mother's assignment of error relating to the trial court's application of ORS 107.135.

Mother next argues that the trial court erred when it failed to apply ORS 109.119 to its custody determination. As we have explained, 258 Or App at 473, ORS 109.119 allows any person "who has established emotional ties creating a child-parent relationship or an ongoing personal relationship with a child" to seek intervention "with the court having jurisdiction over the custody" of the child to ask the court to award that person custody, guardianship, or visitation with the child. ORS 109.119(1), (3)(a). Mother acknowledges that the modification proceeding at issue here did not involve the type of intervention permitted by the statute,[5] but notes that ORS 109.119(2)(c) "contemplates modification proceedings by reference."

To be sure, ORS 109.119(2)(c) does contemplate modification proceedings, but it does not follow that the procedural framework established in ORS 109.119, by which a court is to resolve an initial custody dispute between parents and an intervening third party, applies to a proceeding *to modify* a decision that awarded custody to a third party. All that ORS 109.119(2)(c) provides with regard to modification

---

[5] Specifically, mother acknowledges that "[t]he trial judge was correct that the modification proceeding did not involve an 'intervention' or a 'petition' on the part of [grandmother], as referenced in the preamble of ORS 109.119." The "preamble" to which mother refers is ORS 109.119(1), which, as noted, confers on parties who have a child-parent or ongoing personal relationship with a child the right to intervene or petition to contest custody. Despite mother's desire to treat that subsection as a mere preamble to the presumption in favor of parents embodied in ORS 109.119(2)(a), it is not. "The preamble of a statute is a recital of the motives and inducements which led to its enactment. It is not an essential part of the act and neither enlarges nor confers powers." *Portland Van & Storage Co. v. Hoss*, 139 Or 434, 444-45, 9 P2d 122 (1932). Here, ORS 109.119(1) is integral to the operation of the statute.

proceedings is that the presumption favoring parents in ORS 109.119(2)(a) "does not apply in a proceeding to modify an order granting relief under [ORS 109.119]."[6] Neither ORS 109.119(2)(c) nor any other provision of ORS 109.119 makes the presumption in favor of parents in ORS 109.119(2)(a) applicable to mother's motion to modify the stipulated dissolution judgment in this case. Accordingly, the trial court did not err by failing to apply ORS 109.119 in this proceeding.

Finally, mother contends that the Fourteenth Amendment required the trial court to presume that a modification of custody in favor of mother was in daughter's best interest. Mother's argument is grounded in the substantive rights of parents to direct the upbringing of their children and the United States Supreme Court's application of those rights in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000).

In *Troxel*, a plurality of the Court recognized that, when a fit, custodial parent disagrees with grandparents about their visitation with the parent's child, the parent is entitled to a presumption that the parent's visitation decision is in the best interests of the child. *Troxel*, 530 US at 68-69. There, an unmarried couple were the birth parents of two daughters. After the parents separated, the daughters

---

[6] ORS 109.119(2)(c) codifies the result that we reached in *Lear v. Lear*, 124 Or App 524, 863 P2d 482 (1993). In *Lear*, the mother sought to modify a court order under ORS 109.119 awarding custody of her child to the child's paternal grandparents. At that time—*viz.*, before the statute was amended to address the United States Supreme Court's decision in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000)—ORS 109.119 had been interpreted to require custody to be awarded to a parent unless there were compelling reasons to give custody to a third party. *See Hruby and Hruby*, 304 Or 500, 502, 748 P2d 57 (1987). The issue on appeal in *Lear* was whether that standard survived an initial custody award and, thus, applied in a modification proceeding.

We concluded, in reasoning relevant here, that the standard did not apply in modification proceedings:

"We conclude that, once permanent custody is given to a third party in a proceeding brought under that statute, the party seeking to modify custody must show that a substantial change of circumstances has occurred since the time that the court determined that there were compelling reasons not to award custody to the natural parent. To allow the natural parent to relitigate custody without a change of circumstances could subject child, the child's custodian and the courts to endless relitigation of the same issue. Such a result would be inconsistent with an award of permanent custody and would not appear to be in anyone's best interest."

124 Or App at 527.

lived with their mother. The father lived with his parents, and the daughters visited their father on occasion at their grandparents' home. The father subsequently committed suicide, and, although the daughters at first continued to visit their grandparents, the mother decided to limit visitation. Grandparents petitioned for visitation under the Washington counterpart to ORS 109.119, which allowed a court to award visitation to any person at any time if the court determined that visitation was in the best interests of the child. The court granted visitation, thereby interfering with mother's determination of her daughters' best interests.

As the Oregon Supreme Court has explained, the plurality in *Troxel* held that

> "a court may not override a parent's decision about the care or custody of a child simply because the court determines that the decision is not in the child's best interest, as the trial court did in *Troxel* regarding a grandparent's interest in visitation. *Instead, the court must presume that a fit parent's decision is in the best interest of the child, and the court may reach a decision contrary to the wishes of the parent only if there is evidence sufficient to overcome that presumption.*"

*O'Donnell-Lamont and Lamont*, 337 Or 86, 120, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005) (emphasis added).[7]

However, despite that simple articulation, "[t]he absence of a majority opinion in *Troxel* and the array of viewpoints expressed in the six different opinions make it difficult to identify the scope of the parental rights protected by the Due Process Clause." *Id.* at 100. Indeed, the *Troxel* plurality expressly declined to "define * * * the precise scope of the parental due process right *in the visitation context,*" *Troxel*, 530 US at 73 (emphasis added), let alone in any other context. Instead, a majority of the Justices emphasized the "nuanced, case-specific nature of the inquiry," *O'Donnell-Lamont*, 337 Or at 99, with the plurality and Justice Kennedy agreeing that the constitutionality of any standard in this

---

[7] Because both the Oregon Supreme Court and this court have discussed the contours of *Troxel*'s splintered holding at length on several occasions, we will not reproduce that discussion here. *See, e.g., O'Donnell-Lamont*, 337 Or at 97-101; *Dept. of Human Services v. S. M.*, 256 Or App 15, 25-27, 300 P3d 1254, *rev allowed*, 353 Or 867 (2013).

area "turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best 'elaborated with care.'" *Troxel,* 530 US at 73 (quoting *id.* at 101 (Kennedy, J., dissenting)).

Mother argues that *Troxel's* basic holding applies in our case without regard to the court's prior involvement in determining custody of daughter. Mother argues that, as long as a parent is "fit"—that is, presently willing and able to care for his or her child without posing a risk of harm—a court unconstitutionally interferes with the parent's federal due process rights by reaching a decision about the parent's child that does not adequately respect the parent's decisions about the custody or care of the child; she attaches no significance to the fact that she is asserting her rights in the context of a motion to modify a stipulated dissolution judgment. We do not believe that *Troxel* extends that far.

We begin by noting our disagreement with mother's conception of "fitness" for purposes of *Troxel.* While no Oregon court has had to define "fitness" for purposes of applying *Troxel,* we have noted that, at the very least, the term is not equivalent to the fitness standard that applies in proceedings to terminate parental rights. *See Dept. of Human Services v. S. M.,* 256 Or App 15, 24 n 7, 300 P3d 1254, *rev allowed,* 353 Or 867 (2013); *see also State ex rel Juv. Dept. v. Smith,* 205 Or App 152, 166, 166 n 8, 133 P3d 924 (2006) (noting that *Troxel's* notion of "fitness" is a moving target and citing use of the term in several of the *Troxel* opinions). Similarly, we think the term connotes more than a parent's willingness and ability to care for his or her child without posing a risk of harm.

Although "fitness" was undisputed in *Troxel* and, therefore, the plurality left its precise contours undefined, there is language in the plurality opinion that suggests that the concept was tied in *Troxel* to parental custody and control over a child. For example, in what comes closest to a definition of the term, the plurality noted that

"so long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further

question the ability of that parent to make the best decisions concerning the rearing of that parent's children."

*Troxel*, 530 US at 68-69.

That passage is significant in two respects. First, the plurality equates "fitness" with "a parent adequately car[ing] for his or her children," implying that a "fit" parent possesses some level of parental custody and control over the parent's children. Second, the plurality makes clear that it is addressing a situation in which the state is "inject[ing] itself into the private realm of the family," suggesting that *Troxel* was aimed at the precise dispute before the Court in *Troxel*—that is, it sought to limit state interference with a parent-child relationship, through the imposition of third-party visitation rights, *in the first instance*. That understanding is consistent with the plurality's ultimate conclusion that the award of visitation "failed to provide any protection for [the mother's] fundamental constitutional right to *make decisions concerning the rearing of her own daughters.*" *Id.* at 70 (emphasis added). In other words, the Washington court had interfered with the mother's *existing custodial decision-making authority* over her daughters.

Here, in contrast, the point at which the court "inject[ed] itself into the private realm of the family" and interfered with mother's existing custodial decision-making authority over daughter was the point at which it entered the stipulated dissolution judgment awarding "sole legal and physical custody" to grandmother. At that time, mother decided that an award of custody to grandmother would be in daughter's best interest. The court gave that custodial preference, expressed in the marital settlement agreement, special weight in issuing the dissolution judgment that eliminated mother's custodial rights. That is all that *Troxel* requires in this case.[8]

---

[8] Although we reject mother's contention that *Troxel*'s basic holding applies broadly and without regard to the court's prior child-custody determination, that does not mean that a court is free in a modification proceeding to ignore a parent's desire to care for his or her own child. At the very least, ORS 107.137 requires the court to consider that desire in determining the best interests of the child. And, as a matter of policy, our statutory framework repeatedly emphasizes the importance of that desire. *See* ORS 107.101 (noting state policy to "[a]ssure minor children of frequent and continuing contact with parents who have shown the ability to act in the

Our understanding of *Troxel*'s notion of fitness, and therefore the point at which *Troxel*'s analysis applies, is consistent with the substantive rights that the *Troxel* Court acted to protect. The rights of a parent to direct the upbringing of his or her child "do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." *Caban v. Mohammed*, 441 US 380, 397, 99 S Ct 1760, 60 L Ed 2d 297 (1979). Instead, "the rights of the parents are a counterpart of the responsibilities they have assumed." *Lehr v. Robertson*, 463 US 248, 257, 103 S Ct 2985, 77 L Ed 2d 614 (1983); *see also Pierce v. Society of Sisters*, 268 US 510, 535, 45 S Ct 571, 69 L Ed 1070 (1925) ("The child is not the mere creature of the state; *those who nurture him and direct his destiny* have the right, coupled with the high duty, to recognize and prepare him for additional obligations." (Emphasis added.)); *Smith v. Organization of Foster Families*, 431 US 816, 844, 97 S Ct 2094, 53 L Ed 2d 14 (1977) (the importance of family relationships is not a product of biological relation alone, but "the emotional attachments that derive from the intimacy of daily association"). Thus, although a determination that a parent poses a risk of harm to his or her child would certainly establish that the parent no longer "adequately cares for his or her children (*i.e.*, is fit)," so too would a stipulated judgment granting a nonparent sole legal and physical custody of the parent's children. Hence, neither *Troxel*'s reasoning nor the presumption that it identifies applies in this modification proceeding.[9]

---

best interests of the child" and to "[e]ncourage such parents to share in the rights and responsibilities of raising their children"); ORS 107.149 (same).

Further, we have previously acknowledged that *Troxel*'s presumption is not the sum of a parent's—or child's—constitutional right to maintain familial relationships. *See S. M.*, 256 Or App at 29 n 8. Therefore, notwithstanding the inapplicability of *Troxel* to a given proceeding, when a basis to modify custody has been established, a court decision on the care or custody of a child that gives little or no weight to the parent's desire to care for his or her child conceivably could run afoul of the parent's state or federal constitutional rights.

[9] The dissent states—early and often—that we have concluded that mother is unfit and, on that basis, that mother is not entitled to *Troxel*'s presumption in her favor. 258 Or App at 492, 494, 498, 499, 500, 501. Respectfully, we have done no such thing. We simply have concluded that *Troxel*'s presumption does not apply to a modification proceeding such as this, in which mother seeks to modify a stipulated dissolution judgment that awarded sole legal and physical custody of daughter to grandmother.

Were we to adopt mother's basic premise—that *Troxel*'s presumption survives, unchanged, the entry of a dissolution judgment awarding sole legal and physical custody to another party—we would necessarily need to conclude that the custody provisions of the marital settlement agreement are unenforceable and should not be considered in a custody-modification proceeding, absent proof from grandmother sufficient to overcome mother's more recent, contrary preference. In addition to dramatically undermining the value of marital settlement agreements in dissolution proceedings, to do so would contradict ORS 107.104.[10] We would also necessarily need to conclude that the child-custody determination in the dissolution judgment is not "conclusive as to all decided issues of law and fact" relating to grandmother and mother's custodial rights—contrary to ORS 109.717. The effect of such an approach would be to render the marital settlement agreement and stipulated judgment void, because mother now has a different custody preference.[11] It would also call into question the provisions of the stipulated judgment providing for grandmother's "exclusive discretion in day-to-day parenting" to the extent that that discretion conflicts with mother's continuing right to

---

[10] ORS 107.104 provides, as relevant:

"(1) It is the policy of this state:

"* * * * *

"(b) For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.

"(2) In a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:

"(a) As contract terms using contract remedies;

"(b) By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

"(c) By any combination of the provisions of paragraphs (a) and (b) of this subsection."

[11] Significantly, if mother were correct, then the substance of mother's new, different custody preference would not matter: We would be constitutionally required to presume mother's new preference to be in the best interests of daughter, without any showing of changed circumstances, whether mother sought custody for herself or anyone else. We do not believe that the Due Process Clause places on grandmother, with whom daughter has lived her entire life, the onus of overcoming such a presumption.

direct the "care, custody, and control" of daughter, *even were mother not to seek custody.* The parental-choice protection recognized in *Troxel* does not—indeed, cannot—extend that far.[12]

Finally, even assuming that mother is correct that—notwithstanding the stipulated dissolution judgment—*Troxel's* presumption applies to the modification proceedings at issue here, she has not accounted for the competing custody preference of father, who, although minimally involved in the proceedings, consistently expressed his opposition to a custody modification and his preference that daughter remain with grandmother in Oregon. Thus, even if mother's custody preference (as expressed in the modification proceeding) were entitled to "special weight," we see no reason to elevate it above father's equally legitimate custody preference (as expressed in the marital settlement agreement and during the modification proceedings). If, as mother contends, the trial court erred by failing to afford "some special weight" to her custody preference for daughter, it seems that we would commit the same error by disregarding father's.

We acknowledge that, as a matter of policy, there may be many situations in which it is desirable to award custody to a third party upon the dissolution of a marriage, only to allow a mother or father a streamlined avenue to later regain custody. Some jurisdictions have relied on similar policy concerns to extend *Troxel's* presumption in the manner that mother proposes. The Colorado Supreme Court noted in the context of guardianships, for example, that

"[f]ailure to accord the parents a presumption in favor of their decision to terminate the guardianship would penalize their initial decision that it was in the best interest of the child to enter into a consensual guardianship relationship with the non-parent relatives * * *. An inquiry that focuses solely on the best interest of the child creates the

---

[12] Further, if mother is correct, then ORS 109.119(2)(c), which provides that the presumption in favor of parents "does not apply in a proceeding to modify an order granting relief under" ORS 109.119, cannot be squared with mother's understanding of *Troxel*. If, as mother contends, the presumption recognized in *Troxel* survives an adverse custody decision, then it would apply in modification proceedings and presumably could not be abrogated by statute.

possibility that the desires of fit and suitable parents may lose out to guardians who are able to provide the child a nicer home, a better school district, or more extracurricular activities."

*In re D. I. S.*, 249 P3d 775, 787 (Colo 2011).

Although we are sympathetic to those concerns, we decline to preempt the legislature's role in addressing them by establishing a constitutional principle that lacks a constitutional basis—especially when nothing prevents parents from crafting a marital settlement agreement or dissolution judgment that would allow them to regain custody from a third party.[13] For example, parents could include a provision in a marital settlement agreement specifying that a parent's subsequent change in residential stability, employment, or even the bare desire to become the custodial parent would constitute an unanticipated, substantial change in circumstances. Similarly, parents presumably could include in such an agreement precisely the type of presumption that mother seeks to impose as a constitutional requirement in this case—*viz.*, in any modification proceeding, a rebuttable presumption will favor a parent over a third party regarding custody. If the parents and the prospective third-party custodian agreed to those provisions, they would be bound by them under ORS 107.104, and the judgment that embodies their agreement would be conclusive on the parties as well, ORS 109.717. If the parties did not agree, then the court would proceed to a custody determination in the first instance in a proceeding in which the third party could ask to intervene and seek custody under ORS 109.119.

---

[13] We also note that there may be equally compelling policy concerns weighing against extending *Troxel* to modification proceedings. Extending *Troxel* in that way erodes the vitality of the requirement "that there be a change of circumstances before a court will consider modifying custody[, which] is a rule of long standing." *Bail*, 325 Or at 397 (citing *Merges*, 94 Or at 257-58). As a matter of policy, that rule stems from basic claim- and issue-preclusion principles and serves "'to avoid repeated litigation over custody and to provide a stable environment for children.'" *Bail*, 325 Or at 398 (quoting *Ortiz and Ortiz*, 310 Or 644, 649, 801 P2d 767 (1990)). One could argue that a policy favoring stable custody arrangements for children is as weighty as one seeking to avoid "penalizing" parents for their decision to cede custody in the first instance. Whatever the merits of those competing policies, it is the legislature's role to address them, subject to the applicable constitutional constraints on its policy decisions.

In sum, we conclude that the trial court did not err under ORS 107.135, ORS 109.119, or the federal constitution when it declined to modify the custody provisions of the stipulated dissolution agreement.

Mother also assigns error to the trial court's denial of her motion to modify the parenting plan for daughter and to adjust the child-support obligations to be consistent with the modified plan and the parties' income. As noted, mother's modification motion sought an order "[e]stablishing a new parenting plan" for daughter and "[m]odifying child support in conformity with the new parenting plan and the parties' incomes" as an alternative to a change in daughter's custody. Grandmother did not oppose modification of the parenting plan or child support. At the outset of the modification hearing, grandmother's counsel stated:

"Now, as far as parenting time and child support, it's been over three years. The parties are entitled to have the child support reviewed and modified, and also parenting time can be reviewed and modified based on the best interests."

Grandmother's position remained unchanged at the conclusion of the hearing:

"THE COURT: Mr. Swanson [counsel for grandmother], I have a question. Is your client opposing a motion for modification of the parenting plan?

"MR. SWANSON: No, Your Honor. I think it would be beneficial for all involved to have something that's going to be updat[ed], hopefully, and that may be actually followed through."

The court's letter opinion did not address the proposed modification of the parenting plan and child support. Instead, the court confined its analysis to the custody dispute, concluding that mother had failed to prove a change in circumstances and that a change in custody would not be in daughter's best interests. After incorporating the court's letter opinion, the court's judgment provided that "[r]espondent's Motion to Modify Custody, Parenting Time and Child Support is hereby denied in its entirety."

In light of the views expressed by the parties below and the court's failure to explain the basis for its decision to

reject mother's motion to modify the parenting plan and child support, we conclude that we cannot determine whether the court abused its discretion in ruling on those issues because it is unclear that the court exercised its discretion. Further, given daughter's evolving capacity to engage in long-distance travel and long-term visitation and the outdated nature of the custody evaluator's now four-year-old report, we conclude that the case must be remanded to the trial court for a determination of those issues. In light of that, we also reverse the supplemental judgment awarding attorney fees and costs to grandmother.

Remanded for reconsideration of parenting plan and child support; otherwise affirmed. Supplemental judgment awarding attorney fees reversed.

**DUNCAN, J.,** concurring.

In 2005, mother stipulated that child should be in the custody of child's paternal grandmother. The stipulation was incorporated into a dissolution judgment[1] and, as such, was subject to the statutory and case law requirements for modification of such judgments, including the requirements that the modification is justified by a substantial change in circumstances and that the modification is in the best interests of the child. ORS 107.135; *Travis and Potter*, 236 Or App 563, 666, 237 P3d 868 (2010), *rev den*, 349 Or 603 (2011) (identifying requirements). In 2008, mother moved to modify the judgment; she sought custody of child, among other alternatives. The trial court denied mother's motion, concluding (1) that mother had failed to show a substantial change in circumstances justifying modification of the custody judgment, and (2) that modifying the custody judgment was not in child's best interests. Mother appeals.

---

[1] As the lead opinion recounts, mother and father executed a marital settlement agreement stating that they "desire[d] that [grandmother], be awarded sole legal and physical custody of [child], subject to the joint right of both Husband and Wife to equally share the parenting time * * *." The agreement also stated that grandmother had "exclusive discretion in day-to-day parenting, routine medical and dental matters, [and] interaction with school authorities," and "full emergency authority to seek aid for the child under whatever circumstances [grandmother] deem[ed] appropriate." The settlement agreement was incorporated into the stipulated dissolution judgment, which itself stated that "[grandmother] * * * is awarded sole legal and physical custody of [child], subject to the joint right of both Husband and Wife to parenting time * * *."

The appeal requires us to determine, at least in part, the requirements that a parent must satisfy in order to have a court modify a stipulated custody judgment that awarded custody to a nonparent. Relying on *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000), mother contends that she has a fundamental right to make custody decisions regarding her child and that, as a result, (1) she was not required to show a substantial change in circumstances in order to have the stipulated custody judgment modified, and (2) she was entitled to a presumption that her custody choice was in the best interests of child. Therefore, mother concludes, the trial court was required to award her custody of child, regardless of whether she established a substantial change in circumstances, unless there was sufficient evidence to overcome the presumption that her custody choice was in the best interests of child.

The lead opinion rejects both of mother's contentions, whereas the dissent accepts both of them. I write separately because I would reject mother's first contention and not reach her second one. That is, I would hold that (1) mother was required to establish a substantial change in circumstances in order to have the custody judgment modified, (2) the trial court did not err in concluding that mother had failed to establish such a change, and (3) because mother had failed to establish the requirement for the modification that she requested, we need not decide whether the trial court was required to presume that mother's requested modification was in child's best interests.

Both of mother's contentions are based on *Troxel*, which involved the constitutionality of a Washington State statute that authorized a court to award a person the right to visitation with a child, if the court concluded that the visitation was in the child's best interests, regardless of whether the parent objected to the visitation. In *Troxel*, the dispute over visitation was between a mother and the paternal grandparents of the mother's two daughters. The mother, who had full custody of the daughters, objected to the amount of visitation that the grandparents sought. The Washington Superior Court awarded the grandparents visitation in an amount greater than the amount to which

the mother had agreed. The mother appealed, and the case eventually reached the United States Supreme Court.

A plurality of the Supreme Court concluded that "the Due Process Clause of the Fourteenth Amendment [to the United States Constitution] protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 US at 66. Addressing the specific issue before it, the Court held that the challenged state statute was unconstitutional as applied because it did not afford any special weight to the mother's determination regarding the amount of visitation that was in the best interest of her daughters. The Court explained, "[T]here is a presumption that fit parents act in the best interests of their children." *Id.* at 68. "Accordingly, so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69. The Court further explained, "The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests[,]" *id.* at 69; instead, it appeared to presume that the amount of visitation awarded by the court was in the children's best interests. As a result,

> "[t]he decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child. * * * In that respect, the court's presumption failed to provide any protection for [the mother's] fundamental constitutional right to make decisions concerning the rearing of her own daughters."

*Id.* at 69-70. Accordingly, the Supreme Court concluded that the challenged state statute was unconstitutional as applied.

In *Troxel*, the Supreme Court went on to note that it was not defining "the precise scope of the parental due process right in the visitation context," *id.* at 73, and that "the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is

applied and that the constitutional protections in this area are best 'elaborated with care[,]'" *id.* (quoting *id.* at 100) (Kennedy, J., dissenting). Thus, as the Oregon Supreme Court has stated, the *Troxel* court did not clearly "identify the scope of the parental rights protected by the Due Process Clause * * *." *O'Donnell-Lamont and Lamont,* 337 Or 86, 100, 91 P3d 721 (2004), *cert den,* 543 US 1050 (2005).

The facts of *Troxel* differ in two significant respects from the facts of this case. First, in this case, the proceedings before the trial court were modification proceedings; mother had already stipulated to a judgment awarding grandmother custody of child. Thus, the state had already "inject[ed] itself into the private realm of the family." *Troxel,* 530 US at 68. Second, and as a result of the stipulated custody judgment, mother did not have custody over child at the time of the proceedings, raising the question of whether the *Troxel* presumption applies.

Mother's first contention is that she is not required to establish a substantial change in circumstances in order to have the stipulated custody judgment modified. Essentially, mother's position is that she has a fundamental right to make custody decisions and that that right is not limited in any way by the fact that she already has stipulated to a judgment awarding grandmother custody. Because *Troxel* did not involve a modification proceeding, it provides limited guidance. *Troxel* can be fairly read as establishing that fit parents have a fundamental right to make custody decisions for their children and that, to give effect to that right, fit parents are entitled to a presumption that they act in the best interests of their children, at least during an initial custody determination. *Troxel,* 530 US at 66-68. But those principles do not resolve the issue in this case, which does not involve an initial custody determination.

Obviously, there are competing interests at stake when a parent seeks to modify a stipulated judgment awarding custody to a nonparent. On the one hand is the parent's interest in deciding the custody of the child, and on the other hand is the interest in the durability of the judgment and the related security that the judgment provides to the

child and the custodian. *See State ex rel Johnson v. Bail,* 325 Or 392, 398, 938 P2d 209 (1997) ("The rationale for the change-in-circumstances rule is that, unless the parent who seeks a change in custody establishes that the facts that formed the basis for the prior custody determination have changed materially by the time of the modification hearing, the prior adjudication is preclusive with respect to the issue of the best interests of the child under the extant facts[,]" and "[t]he purposes served by the change-in-circumstances rule are to avoid repeated litigation over custody and to provide a stable environment for children." (Internal quotation marks and citations omitted.)). In my view, requiring a parent who has stipulated to a custody judgment to establish a substantial change in circumstances before the judgment may be modified does not unduly burden the parent's due process rights. Invocation of the state's authority, through the courts, to enter a custody judgment has consequences. Generally, when a parent knowingly and voluntarily stipulates to a custody judgment, the parent can be understood to have agreed to the legal requirements for modifying that judgment.[2] The Due Process Clause does not, in my view, prohibit enforcement of those requirements. In other words, the Due Process Clause does not guarantee a parent the right to modify a stipulated custody judgment for any reason, or no reason, at all.

Here, the trial court concluded that mother had not proved a substantial change in circumstances. It appears that the trial court did not credit mother's testimony that she no longer had any mental health or substance abuse problems. As the lead opinion explains, "the trial court was not required to find mother's testimony to be credible * * * [and there is] no reason to disturb the trial court's findings on appeal." 258 Or App at 476.

Because mother did not satisfy the threshold requirement for modification of the stipulated judgment, there is no need to determine whether modification was in child's best interests and, relatedly, whether mother was entitled to a presumption that it was. Therefore, I would not reach the merits of mother's second contention.

---

[2] Of course, parties can agree to reduce the requirements for modification.

For the foregoing reasons, I join in the portion of the lead opinion that holds that mother was required to establish a substantial change in circumstances in order to have the stipulated custody judgment modified, but I do not join in the portion of the lead opinion that holds that parents who have stipulated to a judgment awarding custody to a nonparent are not entitled to a presumption that they act in the best interests of their children.

Ortega, J., joins in this concurrence.

**EGAN, J.,** dissenting.

The lead opinion holds that the trial court did not err under the federal constitution when it denied mother's motion to modify the custody provisions of the stipulated dissolution judgment. The lead opinion concludes that mother's decision concerning daughter's best interests was not entitled to "special weight" at the modification proceedings and that mother was an unfit parent because she previously stipulated to grandmother having custody of daughter. I would conclude that the trial court erred by failing to give special weight to mother's determination of daughter's best interests as required by the Fourteenth Amendment to the United States Constitution. *See Troxel v. Granville*, 530 US 57, 65-70, 120 S Ct 2054, 147 L Ed 2d 49 (2000). Accordingly, I respectfully dissent.

The *Troxel* plurality concluded that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66. It also stated that "there is a presumption that fit parents act in the best interests of their children." *Id.* at 68. *Troxel*, however, did not clearly "identify the scope of the parental rights protected by the Due Process Clause or the showing that * * * a nonparent must make before a court may interfere with a parent's custody or control of a child." *O'Donnell-Lamont and Lamont*, 337 Or 86, 100, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005) (footnote omitted). In examining *Troxel* to ascertain the scope of the parental right, the Oregon Supreme Court concluded that "the Due Process Clause protects, to some degree, a fit parent's right

to make decisions for a child," *id.* at 100, and that, "to meet due process requirements, 'at least some special weight' must be given to a fit parent's determination of * * * the child's best interest." *Id.* at 94 (quoting *Troxel,* 530 US at 70). Thus, *Troxel* provides a presumption in favor of a fit parent's custody decision that must be overcome before a court may interfere with that decision. That presumption is strong, but "not so strong that it could be overcome only by a showing that the parent poses a risk of harm to the child." *O'Donnell-Lamont,* 337 Or at 101; *see also State v. Wooden,* 184 Or App 537, 554, 57 P3d 583 (2002) (Schuman, J. dissenting) ("[W]e must give significant weight to a fit biological parent's fundamental right to determine the care, custody, and control of his or her children, and, as a consequence, the state may not award custody of a child to a nonparent instead of the child's fit biological parent, contrary to the wishes of the fit biological parent, unless the nonparent has overcome a *powerful* presumption in favor of the fit biological parent." (Emphasis added.)).

In this case, mother attempted to exercise her right to make a decision concerning daughter's custody when she moved to modify the stipulated dissolution judgment. As noted, a fit parent—that is, a parent who is able to adequately care for his or her child, *see Troxel,* 530 US at 68; *Reno v. Flores,* 507 US 292, 304, 113 S Ct 1439, 123 L Ed 2d 1 (1993)—has a federal constitutional right to make decisions concerning the care, custody, and control of the child. The trial court did not consider whether mother was a fit parent. Because no court previously applied the presumption identified in *Troxel* in favor of mother, I would conclude that due process required the court to give mother's decision to assume custody of daughter some "special weight," provided that mother is a fit parent.

Here, mother presented evidence that she has taken parenting classes, has stable employment, and is psychologically sound enough to care for daughter. Although the trial court expressed concern that mother had not proven her abstinence from alcohol, nothing in the record indicates that she has any sort of continuing problem with substance abuse. Grandmother did not controvert mother's evidence

of fitness and, in some respects, although in not so many words, acknowledged that mother is a fit parent. Moreover, grandmother did not contend that, even if mother were a fit parent, the federal constitutional presumption in her favor had otherwise been overcome. Under those circumstances, on this record, a reasonable factfinder could not determine that mother is not a fit parent or that the constitutional presumption in her favor had been overcome. Thus, I would conclude that the trial court erred by denying mother her constitutional presumption and requiring her to prove a substantial change in circumstances under ORS 107.135 as a prerequisite to exercising her constitutional right to make decisions concerning the custody of her daughter.

The lead opinion concludes that mother was not entitled, at the custody-modification proceedings, to a presumption that she acts in daughter's best interests. It reasons that mother's constitutional rights were adequately protected at the initial dissolution proceeding that produced the stipulated custody judgment provision, *i.e.*, that mother's decision concerning the custody of daughter was previously afforded some "special weight." 258 Or App at 481. The lead opinion also concludes that, because mother previously stipulated to grandmother's custody, mother is unfit and thus has forever relinquished the constitutional presumption that she acts in daughter's best interests. 258 Or App at 482 ("[A] stipulated judgment granting a nonparent sole legal and physical custody of the parent's children" would "establish that the parent no longer adequately cares for his or her children (*i.e.*, is fit)." (Internal quotation marks omitted.)). I disagree both with the lead opinion's conclusion that mother's parental decision was afforded some "special weight" in the dissolution proceedings and its conclusion that mother is an unfit parent. I shall address those disagreements in turn.

In my view, the lead opinion's position misconceives the notion of "special weight." At its core, the presumption identified in *Troxel* exists to protect a fit parent's right to direct the care, custody, and control of his or her children against a nonparent's *contrary* wishes. When the stipulated dissolution judgment was entered, neither father, nor

grandmother, nor the state, nor anyone else sought an out-come different from the one that mother desired. Everybody's weight was on the same side of the scales. It is thus impossi-ble to say that mother's custody decision was afforded "spe-cial weight," for there was no countervailing, nonparental weight of the sort that *Troxel*'s parental presumption was designed to protect against. Indeed, we have stated that the parental presumption is inapposite in that circumstance: "Although mother and father both have fundamental rights to the care, custody, and control of their biological children *as against third parties* * * *, *the right arises only when the state would give force to the wishes of a nonparent.*" *Wilson and Wilson*, 199 Or App 242, 249-50, 110 P3d 1106 (2005) (some emphasis added).[1] The lead opinion characterizes the entry of the stipulated custody judgment as the point at which "the court *injected* itself into the private realm of the family and *interfered* with mother's existing custodial decision-making authority" in the first instance. 258 Or App at 481 (brackets and internal quotation marks omitted; emphasis added).

Rather than "injecting" itself or "interfering" with mother's custody decision, the trial court effectuated mother's uncontested custody preference by entering the stipulated dissolution judgment. The very first point at which anyone sought to "interfere" in a manner contrary to mother's wishes was the point at which grandmother opposed mother's deci-sion to seek custody of daughter in the instant proceedings; until that point, the state never attempted to give "force to the wishes of a nonparent." *Wilson*, 199 Or App at 250. The concept of "special weight" exists to ensure that a parent's fundamental liberty interest in making child-rearing deci-sions is not too easily interfered with by a nonparent. That concept is inapposite to a proceeding in which the nonparent

---

[1] The lead opinion contends that we would err by affording mother's custody decision "special weight" over father's contrary custody preference. It would thus decline to "elevate" mother's custody preference "above father's equally legitimate custody preference (as expressed in the marital settlement agreement and during the modification proceedings)." 258 Or App at 484. The response to that is that father's involvement in this case has been next to nonexistent. His only substan-tive act was to make a brief statement to the court in response to the court's invi-tation to do so. When the court asked father if he wished to present any evidence, he declined that invitation. The two relevant—and, for the first time, competing—custodial preferences were mother's and grandmother's.

and the state have obliged to help mother effectuate her custody preference.

There is a significant distinction between a situation where a parent has stipulated to a nonparent's custody and a situation where a parent has lost custody in a prior contested hearing. That distinction is recognized not only in Oregon, *see Wilson*, 199 Or App at 250, but in other states as well. In *C. R. B. v. C. C.*, 959 P2d 375, 380 (Alaska 1998), *overruled on other grounds by Evans v. McTaggart*, 88 P3d 1078 (Alaska 2004), a case involving a father who had previously chosen not to appear at a contested custody proceeding, the Alaska Supreme Court stated:

> "Once a court has properly transferred custody from a parent to a nonparent, it does no good to apply the doctrine to weaken the substantial change requirement for modification. *The proceeding that gave the nonparent custody will have enabled the parent to exercise the parental preference*, and achieved the goal that leads us to treat parent-nonparent cases differently from other custody cases. *Having once protected the parent's right to custody*, at the risk of sacrificing the child's best interests, we should not then sacrifice the child's need for stability in its care and living arrangements by modifying those arrangements more readily than in a parent-parent case."

(Emphasis added.) *C. R. B.* demonstrates that, where the parent has previously been involved in contested proceedings that afforded a presumption in favor of a parent's custody preference, the parent is not entitled to the presumption again after it was previously overcome.[2]

Similarly, in *Guinta v. Doxtator*, 794 NYS 2d 516, 20 AD3d 47 (NY App Div 2005), the court held that New York's parental-preference law—as expressed through a rule requiring nonparents to demonstrate extraordinary circumstances in order to obtain custody—does not apply in proceedings following a *contested* custody case where the parental preference was previously applied. The *Guinta* court carefully noted, however, that New York still applies

---

[2] The *C. R. B.* court noted that, despite not having appeared at the initial custody proceeding, the father had been given notice of the hearing and a chance to be heard. *Id.* at 377.

the parental preference in instances where the initial custody determination was formed with a parent's consent:

> "In New York, the parental preference applies where there has been a voluntary placement of the child or an order entered upon the consent of the parties. Indeed, we wrote in [a previous case] that the extraordinary circumstances rule applies 'even if there is an existing order of custody concerning [the] child unless there is a *prior determination that extraordinary circumstances exist.*'"

*Id.* at 520-21, 20 AD3d at 53 (citations omitted; emphasis added; second brackets in original); *see also id.* at 519, 20 AD3d at 51 ("[O]nce the preferred status of the birth parent *** has been *lost by a judicial determination* of extraordinary circumstances, the appropriate standard in addressing the possible modification of the prior order is whether there has been a change of circumstances ***." (Emphasis added.)). New York and Alaska are not alone in reaching that conclusion. *See Heltzel v. Heltzel*, 248 Mich App 1, 638 NW2d 123 (Mich Ct App 2001) (following stipulated custody agreement with grandparents, mother's decision concerning child was entitled to special weight under *Troxel* in mother's subsequent challenge to grandparent's custody); *Harris v. Smith*, 752 NE2d 1283, 1287 (Ind Ct App 2001) ("Even when a parent initiates an action to re-obtain custody of a child who has been in the custody of a third party, the burden of rebutting [a parent's presumptively superior right to custody] remains upon the third party."); *Ward v. Ward*, 874 So 2d 634, 637 (Fla Dist Ct App 2004) (following stipulated agreement giving grandparents custody, the appropriate test to modify the custody arrangement as between father and grandparents must consider "the right of a natural parent to enjoy the custody, fellowship, and companionship of his offspring"; such a rule is "older than the common law itself" (internal quotation marks omitted)).

I also note that, in the analogous context of guardianships formed with a parent's consent, the "overwhelming majority of jurisdictions" that have considered the matter have "held that parents do not relinquish their fundamental liberty interest upon consenting to a guardianship." *In re Guardianship of S. H.*, 2012 Ark 245 (2012) (so stating and

listing cases). Even in that context, courts observe the distinction between stipulated custody decisions and contested custody decisions. *Compare In re Guardianship of Raven G.,* 66 A3d 1245 (NH 2013) (where the *Troxel* presumption in favor of the mother was applied and overcome at the establishment of a guardianship that was *contested,* the mother was not entitled to the *Troxel* presumption at a subsequent hearing on whether to make the guardianship permanent), *with In Re Guardianship of Reena D.,* 163 NH 107, 35 A3d 509 (2011) (where the *Troxel* presumption was not applied at the establishment of a guardianship because the parents consented to the guardianship, the parents were entitled to the parental preference at a subsequent hearing on whether to make the guardianship permanent). In sum, although I agree with the lead opinion that a parent's decision is not entitled to "special weight" after the presumption in that parent's favor has been previously applied and overcome, I disagree that the presumption was applied, let alone overcome, at the stipulated dissolution proceedings in this case.

After erroneously concluding that some "special weight" was properly applied to mother's custody preference in the dissolution proceedings, the lead opinion goes on to conclude that mother was not a fit parent by virtue of signing a stipulated marital settlement agreement that (1) gave custody to grandmother and (2) did not explicitly reserve for mother the right to exercise her parental presumption at any future modification proceedings. 258 Or App at 480-82, 485.

With regard to the second point, although I agree that a parent may, in certain circumstances, lose the presumption identified in *Troxel,* I do not agree with the lead opinion that mother waived—for all time—her right to the presumption that she acts in daughter's best interests by virtue of stipulating to a third party's custody of daughter. "[C]ourts are reluctant to find that fundamental constitutional rights have been waived"; such a waiver must be "voluntary and must be understandingly made with knowledge by the party of [her] rights." *Huffman v. Alexander,* 197 Or 283, 321-22, 251 P2d 87 (1952), *reh'g den,* 197 Or 331 (1953); *see also State v. Meyer,* 116 Or App 80, 83, 840

P2d 1357 (1992) (whether a defendant has "knowing[ly] and intentional[ly]" waived the right to the assistance of counsel depends, in part, on the information that the defendant has about the consequences of proceeding without counsel). The nature of the constitutional right at issue is too important for an appellate court to conclude that mother permanently conveyed it away to grandmother in the absence of any finding that mother was unfit or that mother's preference had previously been given some special weight.[3] *See Santosky v. Kramer*, 455 US 745, 758-59, 102 S Ct 1388, 71 L Ed 2d 599 (1982) (It is "plain beyond the need for multiple citation that a natural parent's desire for and right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right." (Internal quotation marks omitted.)).

Next, I cannot perceive any basis for concluding, as the lead opinion does today in the first instance, that mother is an unfit parent because she stipulated to grandmother's custody. The trial court never found that mother was unfit, nor could it have. As I have described above, there is no evidence in the record indicating that mother is unable to adequately care for child. Certainly the dissolution court never made a previous finding of parental unfitness, because mother's fitness was not at issue in the dissolution proceedings. That leaves the lead opinion's conclusion that mother became unfit, by operation of law, at the moment that she relinquished custody of daughter to grandmother, or, perhaps, at some unspecified later period after sufficient time had passed for grandmother and daughter to form "the emotional attachments that derive from the intimacy of daily association." 258 Or App at 482 (quoting *Smith v. Organization of Foster Families*, 431 US 816, 844, 97 S Ct 2094, 53 L Ed 2d 14 (1977)).[4]

---

[3] The lead opinion suggests that mother—who was unrepresented by counsel at the time—unequivocally renounced her parental rights by signing the marital settlement agreement. It should be noted, however, that the agreement—as incorporated into the judgment—reserves for mother "continuing contact with" child. The parties also agreed to "construe[]" and "implement[]" the plan to foster daughter's best interests by providing "liberal, predictable and wholesome time between both parents and child" and "that reasonable adjustments will be needed from time to time and that flexibility will be required in administering the plan."

[4] By the lead opinion's logic, not only can a parent lose *Troxel* rights by stipulating to custody of a child by a third party, but a third party can—through some

Leaving aside both the fact that no court ever—before today—found mother unfit and the lack of evidence in the record that mother is unfit, strong policy concerns recommend against the lead opinion's conclusion that mother is not a fit parent. As noted, mother made the decision to relinquish custody to grandmother at a time when mother was drinking heavily and undergoing mental and emotional problems. The uncontroverted evidence is that mother thought, at that time, that it was in daughter's best interests for grandmother to have custody. To say, under those circumstances, as the lead opinion does, that that decision permanently rendered mother an unfit parent—*i.e.*, one who is not entitled to the *Troxel* presumption—penalizes mother for a decision that mother deemed to be in the daughter's best interests.[5] As one commentator has stated:

> "A preference approach tells the parents that they get a second chance. Hopefully, this standard will encourage parents with problems to seek help and strive to rehabilitate themselves. The preference should also reassure a parent that he need not fear placing his child with a good and loving caretaker. If a parent believes that he has no chance to compete with the caretaker under the best interests approach, he may be less apt to agree voluntarily to recognize his problems and settle his child with someone capable and familiar to the child."

Carolyn Wilkes Kaas, *Breaking Up a Family or Putting it Back Together Again: Refining the Preference in Favor of the Parent in Third-Party Custody Cases,* 37 Wm & Mary L Rev 1045, 1097 (1996); *see also Blair v. Badenhope*, 77 SW3d 137, 154 (Tenn 2002) (Birch, J., dissenting) ("[T]he majority's decision to deny superior rights to a parent who voluntarily surrenders custody to a non-parent will forever penalize parents whose decision to surrender custody was made with the best interests of the child as the paramount factor.").

---

combination of sufficient "emotional attachments" and assumption of parental responsibilities—gain *Troxel* rights and wield them to a natural parent's detriment at custody-modification proceedings. *See* 258 Or App 482 (citing *Caban v. Mohammed*, 441 US 380, 397, 99 S Ct 1760, 60 L Ed 2d 297 (1979); *Lehr v. Robertson*, 463 US 248, 257, 103 S Ct 2985, 77 L Ed 2d 614 (1983); *Smith*, 431 US 816).

[5] The irony should not go unstated: The lead opinion holds that mother is no longer entitled to a presumption that she acts in daughter's best interests because of a decision that mother made that was in daughter's best interests.

The lead opinion suggests that I am proposing a "constitutional principle that lacks a constitutional basis" in order to support the policy concern that I have identified above. 258 Or App at 485. It also suggests that I am elevating one policy concern—*i.e.,* not penalizing parents for stipulating to a third party's custody—over other potentially "equally compelling policy concerns" such as the finality of judgments. 258 Or App at 485 n 13. As to the first charge, the constitutional principle that I propose to follow was established in *Troxel.* That principle can be stated simply enough by applying the United States Supreme Court's language to this case: "[Grandmother] did not allege, and *no court has found,* that [mother] was an unfit parent. That aspect of the case is important, for there is a presumption that fit parents act in the best interests of their children." *Troxel,* 530 US at 68 (emphasis added).

As to the second charge, rather than elevating one set of policy concerns over another, I merely differ with the lead opinion's conception of when—and on what grounds—a parent should be deemed unfit. The policy concern that I have identified above regards when it is appropriate for a court to apply the parental presumption identified in *Troxel.* The lead opinion, on the other hand, translates its support for the policy favoring the finality of judgments into a rule that says a parent who stipulates to a third party's custody is no longer fit within the meaning of *Troxel.* Although the policies identified by the lead opinion are doubtlessly important, choosing to uphold them through a rule that a parent becomes unfit, by operation of law, at the moment that the parent stipulates to third-party custody is a curious way to go about protecting those policies.[6] A finding that a parent

---

[6] The lead opinion also states that the effect of my approach would be to "render the marital settlement agreement and stipulated judgment void." 258 Or App 483. That is not at all the case. The lead opinion would put the burden on mother to modify the judgment. Although I would put the burden on grandmother to overcome the presumption that mother acts in child's best interests, that is hardly equivalent to rendering the dissolution judgment or marital settlement agreement void. Moreover, the lead opinion suggests that grandmother has now acquired *Troxel* rights by virtue of the fact that she has assumed the responsibilities for raising the child. *See* 258 Or App at 499-500 n 4 (Egan, J. dissenting). If that is true, the dissolution judgment and marital settlement agreement would be as easily modified under the lead opinion's approach as under mine. The only difference is that the lead opinion would lower the bar for a modification that is requested by the custodial nonparent.

is fit will make it easier for the parent to modify a custody judgment and a finding that a parent is unfit will make it harder to do so, but the effects on the alterability of the dissolution judgment that flow from the fitness determination should not drive that determination's outcome.

The lead opinion is concluding today, in the first instance and as a matter of law, that mother became an unfit parent at the moment[7] that she stipulated to grandmother's custody and, thus, that she forever lost the constitutional presumption that she acts in daughter's best interests. It is also concluding that mother's decision concerning the custody of her daughter was previously afforded some "special weight." I do not think that the record supports either of those conclusions.

I respectfully dissent.

Wollheim and Nakamoto, JJ., join in this dissent.

---

[7] Perhaps that is not what the lead opinion does, for, as noted, it suggests that mother could have preserved her parental presumption by including a provision to that effect in the marital settlement agreement. 258 Or App at 485. According to that rationale, it was merely her lack of foresight to insist upon such a provision that rendered mother unfit. This reveals a fundamental point: It is whether the parent is able to adequately care for the child that renders a parent fit or unfit. Whether mother managed to sufficiently preserve her parental rights in a dissolution judgment and whether the policy favoring the finality of judgments supports reaching the legal conclusion that mother is unfit are not questions that bear on mother's fitness as a parent.