Argued and submitted November 13, 2002, reversed January 29, 2003

In the Matter of the Guardianship of
Katharine Elizabeth Goodwin.

Harriet BURK,
*Appellant,*

*v.*

Christopher HALL,
Dana Hall, and Katharine Elizabeth Goodwin,
*Respondents.*

00C-13904; A112154

62 P3d 394

W. Brad Coleman argued the cause and filed the briefs for appellant.

Tahra Sinks argued the cause and filed the brief for respondents Christopher Hall and Dana Hall.

Dennis Sarriugarte argued the cause and filed the brief for respondent Katharine Elizabeth Goodwin.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

■ ■    Harriet Burk appeals from an order appointing Christopher and Dana Hall as the permanent legal co-guardians of Burk's minor daughter, Katharine Goodwin. Burk asserts that the trial court erred in determining that Katharine was "in need of a guardian" under ORS 125.305(1)(a), and she also asserts that the order violated her constitutional rights as a fit parent to have custodial authority over her child. Because we conclude that the Halls were not entitled to appointment as co-guardians, we reverse.

Katharine resided with Burk until January 12, 2000, when, at age 13, she ran away from home. During the next four months, Katharine stayed at a runaway shelter, at the home of her school principal, and with the parents of a friend. On May 5, 2000, the Halls filed a petition in Marion County Circuit Court seeking appointment as co-guardians of Katharine. Dana Hall is Katharine's half-sister, and Christopher Hall is Dana's spouse. The petition alleged that a guardianship was necessary because Burk had physically abused Katharine and had not been adequately meeting her needs. The petition also alleged that, since January 18, 2000, Katharine had been staying with friends and at the shelter.

In May 2000, the trial court entered an *ex parte* order appointing the Halls as Katharine's temporary co-guardians. On May 24, the court held an evidentiary hearing to determine whether the temporary guardianship should be extended. Burk participated at the hearing, objected to the petition, and presented evidence. Nevertheless, the court extended the guardianship and authorized the Halls to move Katharine to New Jersey to reside with them. On August 14, 2000, the trial court held a further hearing to determine whether or not to appoint the Halls as permanent co-guardians. Once again, Burk participated in the hearing, presented evidence, and objected to the appointment. On October 3, 2000, the court entered an order granting permanent co-guardianship of Katharine to the Halls. Burk appeals from that order.

At trial and on appeal, the parties have shared two sets of assumptions that have guided their arguments. First,

they have assumed that this action is governed solely by ORS 125.305(1) and other general guardianship statutes found in ORS chapter 125.[1] Second, they agree that, because this case involves a dispute between a legal parent and opposing contestants concerning the care, custody, and control of a minor child, the governing statutes must be construed in light of the United States Supreme Court's decision in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000). *See Wilson and Wilson*, 184 Or App 212, 217-19, 55 P3d 1106 (2002) (discussing *Troxel*); *Harrington v. Daum*, 172 Or App 188, 197-98, 18 P3d 456 (2001) (same).

In litigating the case based on the foregoing assumptions, the parties have paid only passing attention to another statute, ORS 109.119.[2] That statute provides, in part:

"(1)   Any person, including but not limited to a related or nonrelated foster parent, stepparent, grandparent or relative by blood or marriage, who has established emotional ties creating a child-parent relationship or an ongoing personal relationship with a child may petition or file a motion for intervention with the court having jurisdiction over the custody, placement, *guardianship* or wardship of that child, or if no such proceedings are pending, may petition the court for the county in which the child resides, for an order providing for relief under subsection (3) of this section.

"(2)(a)   In any proceeding under this section, there is a presumption that the legal parent acts in the best interest of the child.

---

[1] ORS 125.305(1) provides:

"After determining that conditions for the appointment of a guardian have been established, the court may appoint a guardian as requested if the court determines by clear and convincing evidence that:

"(a) The respondent is a minor in need of a guardian or the respondent is incapacitated;

"(b) The appointment is necessary as a means of providing continuing care and supervision of the respondent; and

"(c) The nominated person is both qualified and suitable, and is willing to serve."

[2] This action was filed while ORS 109.119 (1999) was in effect. Because subsections (1), (3), and (8) of the 2001 version are, in all pertinent respects, identical to the comparable subsections of the 1999 version, we apply the 2001 version of ORS 109.119.

"* * * * *

"(3)(a)   If the court determines that a child-parent relationship exists and if the court determines that the presumption described in subsection (2)(a) of this section has been rebutted by a preponderance of the evidence, the court shall grant custody, *guardianship*, right of visitation or other right to the person having the child-parent relationship, if to do so is in the best interest of the child. The court may determine temporary custody of the child or temporary visitation rights under this paragraph pending a final order.

"(b)   If the court determines that an ongoing personal relationship exists and if the court determines that the presumption described in subsection (2)(a) of this section has been rebutted by clear and convincing evidence, the court shall grant visitation or contact rights to the person having the ongoing personal relationship, if to do so is in the best interest of the child. The court may order temporary visitation or contact rights under this paragraph pending a final order.

"* * * * *

"(8)   As used in this section:

"(a)   *'Child-parent relationship' means a relationship that exists or did exist, in whole or in part, within the six months preceding the filing of an action under this section, and in which relationship a person having physical custody of a child or residing in the same household as the child supplied, or otherwise made available to the child, food, clothing, shelter and incidental necessaries and provided the child with necessary care, education and discipline, and which relationship continued on a day-to-day basis, through interaction, companionship, interplay and mutuality, that fulfilled the child's psychological needs for a parent as well as the child's physical needs.* However, a relationship between a child and a person who is the nonrelated foster parent of the child is not a child-parent relationship under this section unless the relationship continued over a period exceeding 12 months.

"* * * * *

"(e)   'Ongoing personal relationship' means a relationship with substantial continuity for at least one year,

through interaction, companionship, interplay and mutuality."

(Emphasis added.)

■ In their brief on appeal, the Halls argue that the constitutional standards adopted in cases construing ORS 109.119 for the purpose of resolving disputes between legal parents and third parties should apply by analogy to this case. That assertion appears to flow from the assumption of both parties that ORS 125.305, not ORS 109.119, is the controlling statute. In her reply brief, Burk asserts:

> "[The Halls] attempt to apply some of the standards of ORS 109.119 to this case, however it is questionable whether or not [that] statute does in fact, apply. ORS 109.119, first requires that the persons seeking custody, must have a 'child-parent relationship' (ORS 109.119(3)(a), 1999 version)[.] It is clear in this case that [the Halls] did not have such a relationship at the time the Court's order was entered."

The quoted argument was not preserved in the trial court. However, if ORS 109.119 applies to this action, the parties may not prevent the court from noticing and invoking that statute merely because they have failed to assert its applicability. *Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 951 P2d 720 (1998); *State v. Smith*, 184 Or App 118, 122, 55 P3d 553 (2002).

If ORS 109.119 applies to this action, it is readily apparent that the Halls were not entitled to be appointed as Katharine's co-guardians. Only a person with a "child-parent relationship" with the would-be protected person can bring an action to establish a guardianship under ORS 109.119. *See* ORS 109.119(3)(a). Subsection (8)(a), in turn, restricts child-parent relationships to those in which the petitioner either had physical custody of, resided in the same household with, or provided day-to-day resources for the child "within the six months preceding the filing of an action under this section." It is undisputed that Katharine was not in the Halls' physical custody, did not reside with them, and did not receive relevant day-to-day resources from them before this action was filed. Although the Halls may or may not have had an "ongoing personal relationship" with Katharine within

the meaning of subsection (8)(b) before they filed this action, that status would have entitled them only to bring an action for "visitation or contact rights," not for guardianship. *See* ORS 109.119(3)(b). Therefore, if ORS 109.119 applies to this action, the Halls were not entitled to appointment, and the trial court's order must be reversed.

The question, then, is whether this action is subject to the requirements of ORS 109.119. The problem is one of statutory construction, involving both ORS 109.119 and ORS 125.305, which we resolve under the methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We examine first the text of the statutes in context to determine whether the legislature's intended meaning has been expressed unambiguously. If either statute is ambiguous, then we resort to legislative history and other aids to construction. *Id.* at 611-12. At first blush, it is easy to understand why the parties have not focused on ORS 109.119. After all, ORS chapter 125 establishes what appears to be a comprehensive framework, both substantive and procedural, of statutory law governing guardianship proceedings. However, an examination of the text and context of both statutes reveals that ORS 125.305(1) must be construed in light of the requirements of ORS 109.119.

ORS 125.305(1) makes clear that it does not specify all of the requirements for establishing a guardianship of a minor. Subsection (1)(a) provides that the court may appoint a guardian for a minor who "needs" one, but that power is subject to the preliminary determination, prescribed by the preface to subsection (1), that "conditions for the appointment of a guardian have been established." ORS 125.305(1). Moreover, subsection (1)(c) further restricts the court's authority to the appointment of a guardian who is "both qualified and suitable." ORS 125.305 does not further specify the criteria for establishing the qualifications and suitability of prospective guardians. Thus, it is apparent from the text of the statute that it cannot be interpreted in a vacuum that disregards other statutes, like ORS 109.119, that prescribe qualifications for guardians of children.[3]

---

[3] ORS 125.200 establishes preferences in appointing fiduciaries, including a requirement that the court consider "any preference expressed by a parent of the

ORS 109.119, in turn, is quite clear and specific in scope. It provides substantive requirements for actions in which a nonparent seeks custody or guardianship of a minor child over the objection of a legal parent. Nothing contained either in the text or context of that statute suggests that the legislature intended for persons who cannot satisfy those requirements to bypass them by proceeding solely under ORS 125.305(1). It makes no sense to assume that the legislature intended to create such a loophole. To the contrary, it makes sense only to conclude that ORS 109.119 is, within the meaning of ORS 125.305(1), a separate source of "conditions for the appointment of a guardian" and of criteria for determining whether the nominated person "is both qualified and suitable." Accordingly, the two statutes can be harmonized in such a way as to give full effect to both. *See* ORS 174.010.

■     However, even if we were to determine that the statutes are in conflict, we would conclude that this action is subject to the requirements of ORS 109.119. The courts have held that when "one statute deals with a subject in general terms and another deals with the same subject in a more minute and definite way," the specific statute controls over the general if the two statutes cannot be read together. *State v. Guzek*, 322 Or 245, 268, 906 P2d 272 (1995); *see* ORS 174.020(2). That maxim is applicable at the first level of statutory construction analysis. *Kambury v. DaimlerChrysler Corp.*, 334 Or 367, 374, 50 P3d 1163 (2002). As pertinent here, although ORS 125.305(1) does address guardianships for minors, it does not specifically address the type of contested guardianship proceeding at issue here, where a third party seeks guardianship of a child over the objection of the child's legal parent. That specific circumstance is provided for by ORS 109.119(1) and (3)(a). It follows that ORS 109.119, the more specific statute, would control in the case of a conflict.

In *Kelley v. Gibson*, 184 Or App 343, 349-50, 56 P3d 925 (2002), we held that ORS 125.305 does not apply to guardianships established pursuant to a court's juvenile

---

respondent." In addition, ORS 125.205 and ORS 125.210 establish certain qualifications for fiduciaries. However, none of those statutes in any way limits or impairs the applicability of the additional requirements of ORS 109.119 to this action.

dependency jurisdiction because ORS 419B.365 provides the only statutory procedure for the establishment of a permanent guardianship for a child within juvenile court jurisdiction. In so holding, we noted but did not reach the issue raised here. We said:

> "[I]t is arguable whether ORS 125.305 would apply were this not a dependency case. ORS 109.119 appears to address guardianships with respect to children who have a living legal parent and contains various presumptions and procedures to protect that parent's rights as enunciated by the United States Supreme Court in [*Troxel*]. However, we need not decide that issue here."

*Kelley*, 184 Or App at 350 n 4 (citations omitted). We now decide that issue. We conclude that guardianship actions involving a child who is not subject to a court's juvenile dependency jurisdiction and whose legal parent objects to the appointment of a guardian are—in addition to the requirements of ORS 125.305—subject to the requirements of ORS 109.119.[4] Because the Halls were not entitled to appointment as Katharine's co-guardians under ORS 109.119(3)(a), the trial court did not have the authority to enter the order so appointing them. Accordingly, we reverse.[5]

Reversed.

---

[4] We are not called upon to decide whether ORS 109.119 has any application to guardianship actions where a minor protected person does not have a living legal parent or the minor's legal parent does not object to the appointment as guardian of a person who lacks a child-parent relationship with the minor. Of course, the legislature, in its policy judgment, is free to address that and any other issue of concern that is raised by our decision here.

[5] Because the Halls do not have a child-parent relationship with Katharine for purposes of ORS 109.119, we do not address the statutory presumption in favor of a legal parent in the 2001 version of the statute nor the relationship between the current version of the statute and *Troxel*.