624 December 26, 2014 No. 75

IN THE SUPREME COURT OF THE
STATE OF OREGON

John Paul EPLER,
*Respondent on Review,*
*and*

Andrea Michelle EPLER,
nka Andrea Michelle Walker,
*Petitioner on Review.*

(CC 04C33678; CA A148643; SC S061818)

En Banc

On review from the Court of Appeals.*

Argued and submitted June 23, 2014.

Richard F. Alway, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs was Philip F. Schuster, II, Portland.

Mark Kramer, Kramer and Associates, Portland, argued the cause and filed the brief for respondent on review. With him on the brief were Pete Meyers and Graham C. Parks, Certified Law Student.

Katelyn B. Randall, Portland, and Robin J. Selig, Portland, filed the brief on behalf of *amici curiae* Legal Aid Services of Oregon and Oregon Law Center.

BALDWIN, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court to rule on mother's request to modify parenting time and child support.

_____
* On appeal from Marion County Circuit Court, Dennis J. Graves, Judge. 258 Or App 464, 309 P3d 1133 (2013).

**BALDWIN, J.**

The issues presented in this case are (1) whether the legal presumption described in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000) (plurality opinion), that a fit parent acts in the best interests of her child, applies to a modification proceeding in which petitioner (mother) seeks to modify a stipulated dissolution judgment that granted legal custody to respondent (grandmother); and (2) whether mother must demonstrate a substantial change in circumstances to modify the dissolution judgment. The trial court denied mother's motion to modify the judgment and grant custody to her based on the change-in-circumstances rule and the best interest of the child, and the Court of Appeals affirmed. *Epler and Epler*, 258 Or App 464, 466, 309 P3d 1133 (2013).

For the reasons that follow, we affirm the decision of the Court of Appeals, but base our decision on different reasoning. We conclude that (1) mother is not entitled to the *Troxel* presumption that her custody preference is in the child's best interest and (2) mother was not prejudiced when she was held to the substantial change-in-circumstances rule. Ultimately, we affirm the trial court's determination that a modification of the custody provisions of the judgment is not in the best interest of the child.

Mother requests that we exercise our discretion to review this case *de novo*. Assuming *arguendo* that we have discretion to consider the matter *de novo* even though the Court of Appeals did not, *see* ORS 19.415(4), we do not find it necessary to do so: The facts are essentially undisputed. Accordingly, we limit our review to questions of law. We take the following facts from the Court of Appeals opinion and from additional undisputed facts in the record.

Daughter, who was approximately seven years old at the time of the hearing on mother's motion, has lived with her paternal grandmother for her entire life. Mother and father lived with grandmother in Oregon when daughter was born in 2003. When daughter was approximately six months old, mother and father separated, father left Oregon, and mother and daughter continued to live with grandmother. Three months after the separation, mother

moved out of grandmother's residence and left daughter in grandmother's sole care. In the months that followed, mother struggled with depression, started drinking alcohol heavily, and was unable to maintain steady employment. Mother then decided to move to Virginia. Before mother moved, father and grandmother engaged legal counsel, who prepared a marital settlement agreement.

The marital settlement agreement provided:

"Husband a[n]d Wife acknowledge that Paternal Grandmother *** has been the primary custodian of [daughter] since [daughter]'s birth in 2003. Through this agreement, it is the intention of the parties to formalize Grandmother's custody, and provide for both Husband and Wife to pay child support to Grandmother for [daughter]'s benefit.

"* * * * *

"Husband and Wife desire that paternal grandmother *** be awarded sole legal and physical custody of their minor child, *** subject to the joint right of both Husband and Wife to equally share the parenting time provided in Marion County SLR 8.075 ***, and with the understanding that Husband's parenting time will include Grandmother."

Mother and father signed the marital settlement agreement in December 2004, and the trial court entered a stipulated dissolution judgment based on that agreement in March 2005.

Mother first filed a motion to modify custody in 2006 but voluntarily dismissed that motion. Two years later, in 2008, she filed a second motion to modify custody and, in the alternative, to modify parenting time and child support. That 2008 motion is the filing at issue in this case. In her motion to modify custody, mother argued that she was entitled to a legal presumption that she acted in the best interests of her child. Mother cited ORS 109.119(2)(a) and the Due Process Clause of the Fourteenth Amendment to the United States Constitution to support her motion. After a hearing, the trial court denied mother's motion in a letter opinion. The court found that (1) mother had failed to prove that a substantial change in circumstances had occurred since the stipulated dissolution judgment and (2) modification of the dissolution judgment would not be in daughter's

best interest. The court did not address mother's requests to modify parenting time or child support.

Mother appealed, and the Court of Appeals affirmed the trial court's custody ruling and remanded for the trial court to rule on mother's request to modify parenting time and child support. *Epler*, 258 Or App at 466. The Court of Appeals first concluded that the trial court did not err in determining that mother had failed to carry her burden of showing a substantial change in circumstances or in determining that modifying the judgment would not be in daughter's best interest. *Id.* at 475-77. The court further concluded that ORS 109.119 did not apply to this modification proceeding and that "[n]either ORS 109.119(2)(c) nor any other provision of ORS 109.119 makes the presumption in favor of parents in ORS 109.119(2)(a) applicable to mother's motion to modify the stipulated dissolution judgment in this case." *Id.* at 477-78.

The Court of Appeals also rejected mother's contention that the trial court was required, under *Troxel*, to presume that a modification of the custody provision was in daughter's best interest. *Id.* at 478-84. In the court's view, the point at which the state "inject[ed] itself into the private realm of the family," for *Troxel* purposes, was when the trial court entered the parties' stipulated dissolution judgment. *Id.* at 481 (internal quotation marks omitted). At that point, the Court of Appeals reasoned, the trial court gave mother's custodial preference the requisite special weight, thereby satisfying the requirements of due process. *Id.* ("That is all that *Troxel* requires in this case.").

Judge Duncan wrote a concurring opinion, in which she expressed her view that

"(1) mother was required to establish a substantial change in circumstances in order to have the custody judgment modified, (2) the trial court did not err in concluding that mother had failed to establish such a change, and (3) because mother had failed to establish the requirement for the modification that she requested, we need not decide whether the trial court was required to presume that mother's requested modification was in child's best interests."

*Id.* at 488 (Duncan, J., concurring).

Judge Egan wrote a dissenting opinion, expressing his view that "the trial court erred by failing to give special weight to mother's determination of daughter's best interests as required by the Fourteenth Amendment to the United States Constitution." *Id.* at 492 (Egan, J., dissenting). The dissent disagreed with the majority's determination that the *Troxel* presumption was applied in mother's favor when the parties entered the stipulated dissolution judgment. The dissent argued that the court should not conclude that mother was not entitled to the parental presumption because she had voluntarily relinquished custody of daughter: "To say, under those circumstances, as the lead opinion does, that that decision permanently rendered mother an unfit parent—*i.e.*, one who is not entitled to the *Troxel* presumption—penalizes mother for a decision that mother deemed to be in the daughter's best interests." *Id.* at 500.

On review, mother reprises her basic argument that she is entitled to a *Troxel* presumption that her custody preference is in daughter's best interest. She also argues that requiring her to demonstrate a substantial change in circumstances to regain custody of daughter violates her due process rights under *Troxel*. Grandmother, for her part, contends that *Troxel* does not apply in this case, because mother is seeking modification of a judgment with a custody provision in grandmother's favor after mother stipulated to that judgment.

We first address mother's argument that ORS 109.119 governs this action. Mother concedes that she filed her motion under ORS 107.135(1)(a), seeking to modify the custody, parenting time, and child support portions of the stipulated dissolution judgment. However, she argues that ORS 109.119 governs all child custody modification proceedings between a parent and a nonparent and therefore applies to this case. Mother contends that she is entitled to the benefit of the *Troxel* presumption as codified in that third-party statute:

> "In any proceeding under this section, there is a presumption that the legal parent acts in the best interest of the child."

ORS 109.119(2)(a). We disagree with mother's contention that ORS 109.119 governs this action.

Under ORS 109.119(1), a nonparent who has established emotional ties creating a child-parent relationship with a child "may petition or file a motion for intervention" seeking custody of the child.[1] By its terms, ORS 109.119 applies to actions in which a *nonparent* initiates or intervenes in proceedings seeking custody. *See [Burk v. Hall](#)*, 186 Or App 113, 120, 62 P3d 394, *rev den*, 336 Or 16 (2003) (noting that ORS 109.119 "provides substantive requirements for actions in which a nonparent seeks custody or guardianship of a minor child over the objection of a legal parent"). The relief available to a nonparent who initiates an action under ORS 109.119(1) is a grant of custody to or a determination of other rights of that nonparent. *See* ORS 109.119(3)(a).[2] In this case, grandmother did not "petition or file a motion for intervention" seeking custody of daughter. Rather, the court initially granted custody to grandmother in a dissolution judgment based on the parties' stipulated agreement. It is mother who initiated this modification action under ORS 107.135, seeking to regain custody from grandmother. Thus, ORS 109.119, by its terms, does not apply to this action.

We next examine mother's contention that her custody preference is nevertheless entitled to "special weight" under *Troxel* even if ORS 109.119 does not govern this action. The United States Supreme Court has long recognized that parents have a fundamental liberty interest, under the Due

---

[1] ORS 109.119(1) provides:

"Except as otherwise provided in subsection (9) of this section, any person, including but not limited to a related or nonrelated foster parent, stepparent, grandparent or relative by blood or marriage, who has established emotional ties creating a child-parent relationship or an ongoing personal relationship with a child may petition or file a motion for intervention with the court having jurisdiction over the custody, placement or guardianship of that child[.]"

[2] ORS 109.119(3)(a) provides:

"If the court determines that a child-parent relationship exists and if the court determines that the presumption described in subsection (2)(a) of this section has been rebutted by a preponderance of the evidence, the court shall grant custody, guardianship, right of visitation or other right to the person having the child-parent relationship, if to do so is in the best interest of the child."

Process Clause of the Fourteenth Amendment, in the care, custody, and control of their children. *See, e.g.*, *Washington v. Glucksberg*, 521 US 702, 720, 117 S Ct 2258, 138 L Ed 2d 772 (1997) ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the rights \*\*\* to direct the education and upbringing of one's children[.]"); *Santosky v. Kramer*, 455 US 745, 753, 102 S Ct 1388, 71 L Ed 2d 599 (1982) (discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Prince v. Massachusetts*, 321 US 158, 166, 64 S Ct 438, 88 L Ed 645 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.").

The Court elaborated on the due process rights of parents in the plurality opinion of *Troxel*, 530 US 57. In *Troxel*, the grandparents of two children had successfully petitioned, over the objection of the children's mother, for visitation rights under a Washington statute providing that any person could petition the court for visitation rights. *Id.* at 61. The statute allowed the state trial court to order visitation rights in favor of the petitioning party without giving the mother's preference any special consideration if it found that visitation would serve the best interest of the child. *Id.*[3] Characterizing the statute as "breathtakingly broad," the plurality held the statute unconstitutional as applied to the mother in that case. *Id.* at 67. The plurality recognized that fit parents enjoy a presumption that they act in the best interests of their children. *Id.* at 68. It did not define "the precise scope of the parental due process right in the visitation context." *Id.* at 73. Rather, the plurality held only that, when a court reviews a fit parent's decision with respect to the care, custody, or control of his or her child, the court is

---

[3] The statute at issue provided:

"Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances."

Wash Rev Code § 26.10.160(3) (1994).

required to give at least "some special weight" to the parent's decision.[4] *Id.* at 70.

In *O'Donnell-Lamont and Lamont*, 337 Or 86, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005), this court "allowed review of [a] child custody proceeding to consider the appropriate application of changes that the legislature made to [Oregon's] third-party custody statute in 2001, following the United States Supreme Court's decision in *Troxel*." *Id.* at 89.[5] The grandparents of two children had obtained a custody award under ORS 109.119, over the objection of the children's father. *O'Donnell-Lamont*, 337 Or at 91-95. On review, this court analyzed the Supreme Court's decision in *Troxel*, noting that the Court had not precisely "identif[ied] the scope of the parental rights protected by the Due Process Clause or the showing that the state or a nonparent must make before a court may interfere with a parent's custody or control of a child." *Id.* at 100. Significantly, this court stated that the parental presumption recognized in *Troxel* is "important, but limited." *Id.* at 120. The court concluded that the father had been afforded his due process rights under *Troxel* as codified under ORS 109.119, and affirmed the judgment of the trial court. *Id.* at 120-21.

However, as previously explained, ORS 109.119 is a third-party statute applicable to actions in which a nonparent initiates or intervenes in a proceeding to establish a

---

[4] Here, the trial court did not make an express or implied finding that mother is unfit, and grandmother has not taken the position that mother is unfit.

[5] This court described the relationship between *Troxel* and the statutory amendments:

"The Supreme Court's decision in *Troxel* led directly to the 2001 amendments to Oregon's statute regulating third-party custody and visitation claims. As previously discussed, ORS 109.119(3)(a) (1999) allowed a court to award custody to a psychological parent if the court determined that custody 'was appropriate in the case' and was 'in the best interest of the child.' That statute was less 'open-ended' than the Washington statute at issue in *Troxel*, because it limited the class of third parties who could seek custody or visitation and also because of cases interpreting the statute to impose a presumption in favor of the legal parent. The statute nevertheless appeared likely to draw a constitutional challenge under *Troxel* because it failed to assign any special weight or deference to the legal parent's interest in the custody and control of a child. For that reason, the legislature undertook to amend the statute."

337 Or at 101.

legal relationship with a child. That statute, and the parental presumption embodied in ORS 109.119(2)(a), do not apply to this proceeding under ORS 107.135(1)(a) where mother seeks to modify a previous dissolution judgment granting custody to grandmother. The question, then, is whether *Troxel* requires us to give special weight or deference to mother's custody preference under the circumstances of this case. We hold that it does not.

In *Troxel*, the court recognized a parental presumption where a "breathtakingly broad" visitation statute permitted a state court to order visitation rights to a nonparent if it found that visitation would serve the best interests of a child, without any special consideration of the parent's decision about the child's best interest. 530 US at 67. The plurality explained that

> "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."

*Id*. at 68-69. Thus, the presumption recognized in *Troxel* was viewed as a protection against the state's ability to arbitrarily intrude upon the parent-child relationship by ordering visitation rights without giving special weight or deference to a fit parent's objection to the visitation.

This is not a case where a nonparent has sought to establish a parent-child relationship or the state has arbitrarily intruded upon such a relationship. Here, mother and father requested and received court approval of a marital settlement agreement acknowledging that grandmother "has been the primary custodian of [daughter] since [her] birth" and expressing the parents' desire that grandmother "be awarded sole legal and physical custody of their minor child." The state did not—by way of a third-party statute or otherwise—inject itself into the private realm of the family to question that parental decision. The parties abided by the terms of the stipulated dissolution judgment until mother initiated this modification proceeding three years later. By that time, grandmother had been the primary caretaker of daughter for nearly five years of her life. From the time

mother moved to Virginia—when daughter was one year old—until the hearing on mother's motion, mother had had visitation with daughter on only five occasions. No visitation had occurred in Virginia, and mother had not visited with daughter during the year preceding the hearing. Thus, mother had fostered a limited parental relationship with daughter. In addition, a parent's due process rights are not static and may vary in extent and degree depending on their exercise. *See Lehr v. Robertson*, 463 US 248, 259-60, 103 S Ct 2985, 77 L Ed 2d 614 (1983) (noting distinction between "a mere biological relationship and an actual relationship of parental responsibility" for due process purposes). Under the facts of this case, we conclude that mother is not entitled to the presumption that her current decision that daughter should return to her custody is in daughter's best interest.

That does not resolve all of the issues presented in this case, however. Mother also contends that the trial court violated her due process rights by requiring her to demonstrate a substantial change in circumstances to regain custody of her daughter. Mother's argument is that *Troxel* prohibits applying the change-in-circumstances rule here because its application would impose an undue burden on her as a parent in seeking to regain custody of her child from a nonparent.

When a court initially makes a grant of child custody in a dissolution judgment, ORS 107.135 governs any modification of that custody provision. As relevant here, ORS 107.135 provides:

"(1)   The court may at any time after a judgment of * * * dissolution of marriage * * * is granted, upon the motion of either party * * *:

"(a)   Set aside, alter or modify any portion of the judgment that provides for * * * the custody, parenting time, visitation, support and welfare of the minor children * * *."

Generally, a parent seeking modification under ORS 107.135 must show that (1) circumstances relevant to the capacity of the moving party or the legal custodian to take care of the child have changed substantially since the original judgment or the last custody order, and (2) it would be in the child's best interest to change custody from the legal custodian to

the moving party. *Boldt and Boldt*, 344 Or 1, 9, 176 P3d 388, *cert den*, 555 US 814 (2008); *State ex rel Johnson v. Bail*, 325 Or 392, 397, 938 P2d 209 (1997) (tracing origin of change-in-circumstances rule to this court's decision in *Merges v. Merges*, 94 Or 246, 257-58, 186 P 36 (1919)).[6]

ORS 107.135 contemplates a mechanism for resolving disputes between two parents relating to their minor children, providing that a court may modify the custody portion of a dissolution judgment upon the motion of either party to the dissolution. ORS 107.135(1)(a). In the typical situation, one party to the dissolution—a parent—moves to modify rights *vis-à-vis* the other party—a parent. Up to this point, the cases in which Oregon appellate courts have applied the change-in-circumstances rule under ORS 107.135 have all involved disputes between two parents. *See, e.g.*, *Boldt*, 344 Or at 9-10 (applying change-in-circumstances rule in custody modification action between mother and father); *Bail*, 325 Or at 399-400 (same); *Henrickson v. Henrickson*, 225 Or 398, 402-05, 358 P2d 507 (1961) (same). The rationale for the judicially created rule is that, unless the parent seeking a custody change establishes that the facts that formed the basis for the prior custody determination have changed substantially, the prior custody determination "is preclusive with respect to the issue of the best interests of the child under the extant facts." *Bail*, 325 Or at 398. The main purposes of the rule are "to avoid repeated litigation over custody and to provide a stable environment for children." *Ortiz and Ortiz*, 310 Or 644, 649, 801 P2d 767 (1990).

---

[6] In determining whether a custody modification would be in a child's best interests, a court is required to consider the following factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child;

"(c) The desirability of continuing an existing relationship;

"(d) The abuse of one parent by the other;

"(e) The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f) The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."

ORS 107.137(1).

Thus, the change-in-circumstances rule is not a statutory requirement, but rather a judicially created one. ORS 107.135 does not mandate the application of that rule. *See Bail*, 325 Or at 397 (observing that this court first announced the rule in *Merges*, 94 Or 246). Because the change-in-circumstances rule is judicially created, this court has the authority to determine on prudential grounds whether to create an exception to the change-in-circumstances rule in fact situations similar to those presented in this case.

We need not decide in this case, however, whether the trial court should have applied the change-in-circumstances rule to mother. In this case, the trial court did not base its decision to deny mother's motion for modification solely on her failure to demonstrate a change in circumstances. After a hearing on the merits, the trial court considered whether a change in custody was in the child's best interest. Indeed, the trial court clearly considered grandmother's evidence compelling in reaching its decision regarding the best interests of the child. Thus, mother was not prejudiced by the trial court's determination that she had not demonstrated a substantial change in circumstances. We therefore do not find it necessary to address mother's constitutional challenge to the application of the rule.

Finally, we review the trial court's determination that the child's best interests would not be served by a change in custody. The standard of review of a trial court's best interest determination in a custody modification proceeding is for abuse of discretion. *Godfrey v. Godfrey*, 228 Or 228, 236, 364 P2d 620 (1961), *overruled on other grounds by Hawkins v. Hawkins*, 264 Or 221, 504 P2d 709 (1972). Here, the trial court found that daughter had lived with grandmother "for the past seven formative years" of her life. As noted, at the time of hearing, mother had visited daughter a total of five times. The court found that daughter was well-settled in her school, and that she had a support network of friends and members of father's family in Oregon. The court also found that daughter is "strongly bonded" to grandmother and that mother's plan to move daughter to Virginia would "uproot [daughter] from the only home (Oregon) she has ever known."

In ruling on mother's motion, the trial court carefully considered the factors listed in ORS 107.137(1), including the emotional ties between daughter and other family members, the interest of the parties in and attitude toward the child, the desirability of continuing an existing relationship, and the preference for daughter's primary caregiver. *See* ORS 107.137(1) (listing the factors for courts to consider to determine the best interests of the child when granting custody). The court concluded that mother's motion to modify the dissolution judgment was not in the best interest of the child, and we affirm that determination.[7] *Godfrey*, 228 Or at 236; *see also Bail*, 325 Or at 401 (evidence sufficient to support trial court conclusion that custody modification decision in child's best interest). We therefore affirm the decision of the Court of Appeals as to the custody portion of mother's motion to modify the dissolution judgment. We remand to the trial court for further proceedings regarding mother's motion to modify that judgment with respect to parenting time and child support.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court to rule on mother's request to modify parenting time and child support.

---

[7] In its letter opinion, the trial court encouraged mother to reintegrate herself into daughter's life and build her relationship with daughter:

"Mother works as a prison guard in Virginia and has held that job since March 2008. There is no doubt that Mother wants to begin parenting [daughter], but on her own terms. If she relocated, found a job and reintegrated herself into [daughter]'s life, her chances for modification of the Judgment would be greatly enhanced."