***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted June 23, affirmed August 3, 2022

In the Matter of the Marriage of

Nicole Regene MAXEY,
*Petitioner-Appellant,*
*and*

Steven Charles PITZING,
*Respondent-Respondent.*

Clackamas County Circuit Court
17DR07699; A175656

Katherine E. Weber, Judge.

Craig M. Cowley argued the cause and filed the brief for appellant.

No appearance for respondent.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

Mother appeals a supplemental judgment of marital dissolution that gave mother sole legal custody of the parties' child, M, and that made certain modifications to the parenting-plan terms, but that kept parenting time and child support the same. Mother contends that the modification court erred in three regards, all with respect to the parenting plan: (1) by failing to consider the recommendations of the custody evaluator and M's attorney; (2) by failing to make adequate findings or provide an adequate explanation of its best-interest determination; and (3) by failing to modify the plan as mother requested. For the reasons explained below, we affirm.

## FACTS

The parties were married for five years and have one son, M, born in 2014. In August 2018, a general judgment of marital dissolution was entered. As per the parties' stipulation, the judgment provided for mother and father to have joint legal custody of M, with mother designated as the primary residential parent. Father was given parenting time every other weekend (from Friday 4:00 p.m. to Sunday 4:00 p.m.), on Wednesday evenings (from 4:00 p.m. to 8:00 p.m.), and on specified holidays. Father was ordered to pay child support.

In March 2019, mother moved to modify custody, parenting time, and child support. She attested in her attached declaration that, among other things, father was attempting to undermine M's relationship with mother, that father had shown contempt for the parties' parenting relationship and the parenting plan, that father had threatened mother's significant other, and that father had interfered with M's education. Mother requested sole legal custody of M. She also requested that the parenting plan be modified in M's best interest (without specifying how). And she requested that child support be modified per the Oregon Child Support Guidelines to reflect the change in parenting time. Father responded in April 2019. He conceded that it was appropriate that mother be given sole legal custody of M. However, he argued against any reduction in his parenting time. He also made his own request for five specific

changes to the parenting plan, related to M's birthday, calls with mother during father's parenting time, a "right of first refusal" for parenting time, extra parenting time for father until M started kindergarten, and the timing of Wednesday parenting time.

In the summer of 2019, the court issued several orders in response to motions filed by mother. It issued an immediate-danger order that gave mother temporary sole legal custody of M, based on a "danger of emotional harm" to M, after father withdrew consent for M's counseling. It appointed Dr. Wendy Bourg as a custody evaluator. And it appointed an attorney to represent M. A year later, in July 2020, on mother's motion, the court continued the existing immediate-danger order and added a provision that father's parenting time would be limited to two hours twice a week with professional supervision at father's expense, after an incident on July 4 in which M sustained second-degree burns from a sparkler firework while in father's care. In August 2020, the court held father in contempt for not cooperating with the previously ordered custody evaluation.

The case went to trial in August 2020. The trial took place over three days. As outlined in her trial memorandum, mother requested that father be required to complete his part of the custody evaluation—including submitting to a psychological evaluation and providing documents to Bourg—and that the court then modify the parenting plan in whatever way that Bourg recommended. Mother requested that, in the meantime, father's parenting time be supervised. M's attorney also filed a trial memorandum, which generally supported mother's requests, supported one of father's requests, suggested an additional type of evaluation of father (by a dialectical behavioral therapist), and requested nearly a dozen specific modifications to the parenting plan to either reduce discord between mother and father or to address a specific concern such as the possibility that M might be on the autism spectrum. Father, who appeared *pro se*, did not file a trial brief.

Both parents testified at trial, as did Bourg. As relevant here, Bourg testified that she could not really make any recommendations on father's parenting time—as to either

its amount or whether it should be supervised—because she had only been able to evaluate mother. Father had not provided any of the information that he was ordered to provide, or otherwise cooperated in an evaluation, so her only information about father came from mother, public records, and the like. Before making a recommendation, Bourg would want, among other things, a psychological evaluation of father and an alcohol-use evaluation of father.

In closing arguments, mother and M's attorney took positions consistent with their trial memoranda. Father's position was less focused, but, essentially, he opposed any reduction in his parenting time, opposed supervision of his parenting time, expressed willingness but a lack of funds to participate in evaluations, and did not consider it necessary to change the parenting-plan terms, except perhaps to address M's birthday and to reduce calls to the other parent during parenting time.

The court announced its ruling orally at the conclusion of trial, and later entered a supplemental judgment that reiterated its findings and conclusions. The court awarded sole legal custody of M to mother. The court commented that, "for some reason," the parties had litigated custody, rather than focusing on parenting time, despite father having conceded custody in April 2019. The court then proceeded to make findings, including finding that father had made "negative and disparaging comments" to mother, that M made similar comments to mother after returning from father's care, that father had consumed alcohol during his parenting time, and that M was accidentally injured by a firework while in father's care on July 4. As to the last point, the court gave a verbal "admonishment" regarding future firework use, but concluded that M was not in immediate danger from father, and dismissed its immediate-protection order. The court also vacated its previous contempt order against father, which had been based on father's failure to comply with the court-ordered custody evaluation. The court explained that, in hindsight, it had been "incorrect" to hold father in contempt, because father had conceded custody long before the contempt hearing (which the court apparently had not realized at the time

of the hearing[1]), such that a custody evaluation was "not necessary."

As for parenting time, the court determined that it was "in [M]'s best interest that the parenting plan stipulated to by the parties in the General Judgment remain unchanged." (Context suggests that the court was referring to the parenting-time aspect of the plan.) And, because there was "no change in the allocation of overnights between the parties," the court declined to modify child support. The court did make certain modifications to the parenting-plan terms, however, which mostly tracked changes requested by M's attorney, as well as addressing some issues raised by mother, father, or Bourg. Specifically, the court ordered that neither parent disparage the other in M's presence, that neither parent consume alcohol during parenting time, that both parents attend a specific parenting class, that both parents actively support and engage in M's counseling, that all nonemergency parental communications occur through My Family Wizard, that no "right of first refusal" exist, that Skype calls to the other parent not be scheduled during parenting time except at M's request, and that mother and father have parenting time on M's birthday in alternating years. The court also "strongly encouraged" the parties to have M medically evaluated for autism.

Finally, the court emphasized that the parties needed to move past their contentious relationship, immediately begin "discussing the other parent in a positive, loving, and caring way in front of [M]," and put M's best interests at the forefront, or else parenting time could be substantially limited or even cut off completely in the future:

> "I'm hopeful that my comments will be taken to heart by both of you and that you will do the best that you can to continue to collaboratively coparent your child. It is in his best interest that you do so. You should anticipate that if

---

[1] We note that the phrasing of father's response on custody, in his *pro se* April 2019 filing, could have caused some of the confusion. In a single paragraph, father *denied* that it was in M's best interest for sole custody to be awarded to mother (which would suggest that custody should not be changed), but then *acknowledged* that joint custody could not continue, and ultimately concluded, "Respondent acknowledges that Petitioner is the primary parent, and therefore concedes custody to Petitioner."

you do not follow all of my orders that I have put in place today, and that if you are back in a courtroom where there are allegations of behavior such that I have seen today, a judge could make a different decision in the future, substantially limiting, if not cutting off completely, either or both of your parenting time. Both of you need to rethink how you're dealing with the other parent. Both of you need to be putting your child first. I hope that I have made this strong enough in my comments to you, and it's my great hope that behavior changes, that you coparent in a better fashion, and we do not see you back before the court again."

## ANALYSIS

We begin with mother's second assignment of error. Mother contends that, regarding the parenting plan, the modification court failed to make adequate findings as to M's best interest, specifically with reference to the ORS 107.137(1) factors,[2] and failed to explain the relationship between its findings and the factors. In the course of her argument, mother also suggests that the court should have explained why it did not believe that it was in M's best interest to grant all of mother's and M's attorney's requests.

We reject that argument on procedural grounds. After ruling, the modification court gave the parties an opportunity to ask questions about the ruling, and the parties in fact asked questions that the court answered. At no point did mother request that the court make express

---

[2] When determining the *custody* of a minor child, ORS 107.137(1) requires the court to "give primary consideration to the best interests and welfare of the child" and identifies six factors that the court "shall consider" toward that end. When developing a *parenting plan* for a minor child, ORS 107.105(1)(b) requires the court to act "in the best interest of the child" and imposes certain parameters on that decision. We have implicitly construed ORS 107.105(1)(b) to silently incorporate the ORS 107.137(1) factors. *See Cooksey and Cooksey*, 203 Or App 157, 167, 125 P3d 57 (2005) ("ORS 107.137 lists various factors that the court must consider in determining the best interests of a child in custody cases. We know of no reason why those same factors would not be relevant to a determination of the best interests of a child in a case involving relocation only."); *see also, e.g.*, *Davison and Schafer*, 308 Or App 513, 518, 479 P3d 1108 (2021) (stating, in a case involving parenting-plan modifications, that the best-interest analysis under ORS 107.105(1)(b) "requires the trial court to consider the statutory factors in ORS 107.137(1)"). In this case, mother expressly asked the court to apply the ORS 107.137(1) factors in deciding parenting-plan issues, as did M's attorney, and father was silent on that issue. Under the circumstances, on this record, it is reasonable to presume that the modification court understood that it should consider the ORS 107.137(1) factors in deciding parenting-plan issues.

findings on each factor that it considered, nor did she request a specific explanation for any portion of the court's ruling. When the court makes a discretionary decision without detailing its reasoning, and a party believes that further explanation is necessary for meaningful appellate review, it is " 'incumbent on [the party] to request it.' " *Botofan-Miller and Miller*, 365 Or 504, 525, 446 P3d 1280 (2019), *cert den*, ___ US ___, 141 S Ct 134 (2020) ("Mother's lawyer asked for a clarification of the court's order respecting the transition of custody, but he did not ask for findings relating to the statutory best interest factors or clarification of the ruling concerning the standards for modification. As this court stated in *Anderson*, 'If defendant believed that further explanation than the trial court provided was necessary for meaningful appellate review, it was incumbent on him to request it.' " (Quoting *State v. Anderson*, 363 Or 392, 410, 423 P3d 43 (2018).)).[3] Mother's second assignment of error therefore does not provide a basis for reversal of the judgment.

Turning to mother's first and third assignments of error, mother argues that the modification court wrongly disregarded recommendations made by Bourg and by M's attorney and wrongly rejected plan modifications that mother had requested. To the extent that mother seeks discretionary *de novo* review, we decline to provide *de novo* review. *See* ORS 19.415(3)(b) (providing for discretionary *de novo* review in certain cases); ORAP 5.40(8)(c) (explaining that we exercise such discretion "only in exceptional cases"). We instead review for abuse of discretion. *Weems v. Winn*, 272 Or App 758, 761, 358 P3d 322 (2015).

The modification court did not abuse its discretion in ruling as it did on the parenting plan. When the court

---

[3] Mother cites *Epler and Epler*, 258 Or App 464, 309 P3d 1133 (2013), *aff'd*, 356 Or 624, 341 P3d 742 (2014), for the proposition that, even without a specific request from a party, a trial court making a discretionary ruling must provide enough findings and explanation to allow meaningful appellate review, or else remand is appropriate. *See Epler*, 258 Or App at 486-87 ("In light of the views expressed by the parties below and the court's failure to explain the basis for its decision to reject mother's motion to modify the parenting plan and child support, we conclude that we cannot determine whether the court abused its discretion in ruling on those issues because it is unclear that the court exercised its discretion."). To the extent that tension exists between *Epler* and *Botofan-Miller*, the latter is the most recent word from the Supreme Court on the subject and is thus controlling.

develops a parenting plan, the controlling consideration is "the best interest of the child." ORS 107.105(1)(b). Here, the court expressly determined that it was in M's best interest not to change the existing plan, at least as far as father's parenting time, which carried an implicit determination that it was not in M's best interest for the court to delay ruling on parenting-plan modifications while father submitted to various evaluations to see if they might lead to evidence to support mother's request to change the existing plan. It was within the court's discretion to decide the modification issues on the existing evidence, particularly when mother was being awarded sole legal custody of M[4] and when father already had fairly limited parenting time (essentially two weekends a month, one evening a week, and some holidays). And, other than denying mother's and M's attorney's requests to defer deciding the parenting-plan modification issues until after father completed the custody evaluation and Bourg made recommendations, the court actually made most of the parenting-plan modifications requested by M's attorney, as well as making other modifications to address issues raised by mother or Bourg. Those modifications have already been described.

On this record, the court acted within the range of legally permissible outcomes and, accordingly, did not abuse its discretion. *See Olson and Olson*, 218 Or App 1, 16, 178 P3d 272 (2008) ("[A] trial court's *** award must reflect the exercise of discretion under the correct methodology, and it must lie within the range of legally permissible outcomes."). In so concluding, we emphasize the standard of review, which requires us to accept express factual findings if

---

[4] We note that, as to custody, mother is correct that, until the court actually awarded custody to her, mother could not assume that the court would do so simply because father conceded the issue. It is therefore understandable that mother would address custody at trial, and it is unclear why the court was somewhat critical of that issue being litigated. Both orally and in writing, the court made a point of saying that, "for some reason," the parties had "disregarded" father's concession on custody (which was included in his first filing in April 2019) and tried the case as "a custody case, not a parenting time case." When mother's attorney said that he had a question about the court's comment, the court stated, "I don't need a comment, and I don't need a response. I just need to know if there are any questions." At that point, perhaps understandably, mother's counsel did not say anything further on the custody issue—but did ask for clarification on other issues.

there is any evidence in the record to support them, assume implicit factual findings consistent with the trial court's ultimate conclusions, and "accept reasonable inferences and reasonable credibility choices that the trial court could have made." *Botofan-Miller*, 365 Or at 505-06. To the extent that the court did not explain its reasoning in great detail in this case, thus allowing the possibility of a hidden analytical flaw, any such flaw is not apparent on this record, and it was incumbent on mother to make the necessary record to bring it out for appellate review. *See id*. at 525. Ultimately, we must "uphold the trial court's best interest determination unless [the] court exercised its discretion in a manner that is clearly against all reason and evidence," *id*. at 506 (internal quotation marks omitted), and we cannot say that standard is met here. We therefore reject mother's first and third assignments of error.

Affirmed.